Cunningham *v.* Ashbrook.

CUNNINGHAM, Plaintiff in Error, *vs.* ASHBROOK & OTHERS, Defendants in Error.

1. As a general rule, goods existing separately and ready for immediate delivery, are the only proper subjects of a common law sale, which is, strictly speaking, a transaction operating as a present transfer of title, and does not include executory contracts for the sale and delivery of goods to be separated from a larger mass, or to be afterwards procured or manufactured for the buyer.

2. To constitute a delivery, within the meaning of the statute of frauds, there must be not only a change of the actual possession, but a change of the civil possession, which is a holding of the thing, with the design of keeping it as owner; and this is a question of fact for a jury.

3. The principle that, in a sale of goods, no title passes, while any act, such as counting, weighing or measuring, remains to be done by the seller, is only applicable when such act is necessary to separate the goods from a larger mass; and does not apply to the sale upon fixed terms, by weight to be subsequently ascertained, of goods already separated, in which case the title passes by delivery; and as a consequence, the loss by a destruction of the goods, after they are delivered and before they are weighed, will fall upon the buyer.

4. Although there is no sale until the price is settled, yet it is settled, within the meaning of this rule, where the terms are so fixed that the sum to be paid can be ascertained by weighing, without further reference to the parties themselves.

| 20 | 553 |
| --- | --- |
| 46a | 595 |

| 20 | 553 |
| --- | --- |
| 115 | 436 |

| 20 | 553 |
| --- | --- |
| 57a | 241 |

| 20 | 553 |
| --- | --- |
| 128 | 572 |

| 20 | 553 |
| --- | --- |
| 68a | 683 |
| 69a | 449 |

| 20 | 553 |
| --- | --- |
| 71a | 108 |

| 20 | 553 |
| --- | --- |
| 91a | 567 |
| 91a | 569 |

| 20 | 553 |
| --- | --- |
| 93a | [2]635 |

| 20 | 553 |
| --- | --- |
| 98a | [1]459 |

5. As in the sale of an entire drove of hogs, upon fixed terms, by net weight, a jury would be at liberty to infer delivery from change of possession, an instruction which would be understood to assert, as a matter of law, that this inference would be repelled by the fact that the hogs were to be subsesequently weighed, is erroneous.

*Error to St. Louis Court of Common Pleas.*

This was an action to recover the price of a drove of hogs, alleged in the petition and denied in the answer to have been sold and delivered.

At the trial before a jury, it appeared in evidence that the defendants were engaged in the business of slaughtering and packing hogs for themselves, and also slaughtering for other packers. They had an arrangement with McAllister and also with Whitaker, who were packers, that each should have one third of all the hogs slaughtered by them, they to attend to the buying, and do the slaughtering, for the sake of the offal. There was an agent employed to buy, who testified that he bought sometimes for the defendants, and sometimes for Mc-Allister and Whitaker, but principally for the defendants. This agent engaged all the plaintiff's hogs, 148 in number, at $4 15 *per hundred, net weight, to be delivered at the slaughter house of the defendants, and killed and weighed by the buyer.* He did not state for whom he was buying, but the seller supposed it was for the defendants, as he was known to be their agent. The agent testified that when he bought the hogs, he did not know whether the defendants, Mc-Allister or Whitaker would get them. The hogs were taken to the slaughter house of the defendants the same day, and the next morning killed. The defendants then notified the seller to call next day at the packing house of McAllister, who would take the hogs, and see them weighed and get his pay. That night, however, the slaughter house burned down, and the hogs were destroyed. It was in evidence that it was customary for hogs to be weighed at the packing house, in the presence of the seller, who then received his pay from the packer ; and one

witness undertook to testify that, *by the custom*, the owner-ship of the seller continued until the hogs were weighed.

The Court of Common Pleas gave the following instruction: "If the hogs were sold by net weight, to be ascertained by weighing the hogs after they were slaughtered and cleaned, and not to be paid for until so weighed, and the hogs were destroyed by an accidental fire before they were weighed, then the loss falls upon the seller, unless he shows that the parties intended the sale to be absolute and complete before the weighing."

The plaintiffs submitted to a nonsuit, and afterwards sued out this writ of error.

*Glover & Richardson,* (with whom was *D. C. Woods,*) for plaintiff in error. The instruction given was erroneous. It attributes an undue importance to the matter of weighing, which is only essential when it is necessary to the act of delivery. So Kent says, (2 vol. 496,) "if the goods be sold by number, weight or measure, the sale is incomplete, and the risk continues with the seller *until the specific property be separated and identified.*" The reason of this is plain. If ten hogs are sold out of a lot of 100, the particular ten sold must be counted out and separated before they can be delivered. But we maintain that 148 hogs in a pen are a lot of goods and chattels, designated, set apart, separated, identified, and certain, so as to be the subject of a complete sale, and in a deliverable condition; and having been delivered to the defendants according to the contract, the stipulation to weigh was intended, not to suspend the passing of the title, but only to enable the parties to settle their accounts. (*Damon* v. *Osborn,* 1 Pick. 476. *Parks* v. *Hall,* 2 Pick. 212. 6 Pick. 280. 12 Pick. 76. 4 Pick. 516. 13 Pick. 175. 6 Watts & Serg. 357. 20 Pick. 280.) The instruction of the court ought to have rested the evidence of title upon the question of *delivery* made by the pleadings. The error consisted in supposing that the title ever passes by an act of weighing as such. Again, the instruction was erroneous because the defendants had dealt with the hogs as their own. (2 Kent, 501.) Again, it was erroneous, because, at

the time of the destruction of the property, the defendants were not in a condition to object either to the quantity or quality of the goods. (2 Kent, 495. 14 Maine, 502. 7 Cow. 86.)

*J. A. Kasson*, for defendants in error. It is contended that the instruction was correct. The hogs being sold by net weight and not to be paid for till this was ascertained by weighing, how can the contrary be contended? If some act remains to be done, in order to ascertain the quantity, or quality or or price, until this is done, the property remains at the risk of the vendor. Thus if weighing remains, (*Hanson* v. *Meyer*, 6 East, 625,) or the contents of bales are to be counted, (2 Camp. 240,) or cash sale, and price not paid, (3 Barn. & Ald. 680.) In this case, delivery, acceptance and price were all to be by net weight. (See further, 2 B. & Cress. 511. 3 B. & Ald. 325. 5 Taunt. 621–2 and note. 14 Wend. 35–6. 20 Pick. 283–4.) It is to be remembered that the thing sold was not the hog, but the pork. Hence, the slaughterers were the bailees of the sellers for killing and reducing the hog to the condition in which it was to be delivered, to-wit, *net weight*, after being cleaned. The plaintiff seeks to recover in the face of a stipulation that the price was not to be paid until the hogs were weighed.

LEONARD, Judge, delivered the opinion of the court.

The only things essential to a valid sale of personal property at common law were, a proper subject, a price, and the consent of the contracting parties, and when these concurred, the sale was complete, and the title passed without any thing more. (2 Black. Com. 447. *Bloxom* v. *Sanders*, 4 Barn. & Cres. 941.) The term sale, however, in its largest sense, may include every agreement for the transferring of ownership, whether immediate or to be completed afterwards, and goods, in reference to the disposition of them by sale, may be considered as existing separately and ready for immediate delivery, or as a part of a larger mass from which they must be separated by counting, weighing or measuring, or as goods to be

hereafter procured and supplied to the buyer, or to be manufactured for his use. Goods of the first sort are the only proper subjects of a common law sale, which is strictly a transaction operating as a present transfer of ownership, and does not include executory contracts for the future sale and delivery of personal property, although there are some apparently anomalous cases in our books in which transactions in reference to goods to be separated from a mass seem to have been treated, where there had been a constructive delivery, as valid sales, producing a present change of property.

The general rule, however, is otherwise, and all the different sorts of goods to which we have referred, except the first, are, under our law, the proper subjects only of executory agreements—contracts for the future sale and delivery of them.

The Roman law, however, it is said, dealt differently with this subject. In that system of jurisprudence (Bell on Contract of Sale, 9,) " a sale was not an immediate transmutation of property, but a contract of mutual and personal engagements for the transference of the thing on the one hand and the payment of the price on the other, without regard to the time of performance on either part, that being left to be regulated by the agreement of the parties, the seller being bound to deliver the thing in property to the buyer at the time agreed on, and the buyer to pay the price in the manner settled between them. The distinction was carefully observed between the direct right of property (*jus in re*) conferred by delivery, and the indirect right (*jus ad rem*) to demand of the seller delivery of the thing sold. There thus arose out of the contract the double relation of debtor and creditor, as to the thing sold and the price to be paid for it. Corresponding with these relations, two actions were given, both personal and direct; one for the thing sold, the other for the price due. The claim for the price being absolute on delivery or tender of the thing and the demand for the thing conditional, provided it had not in the mean time perished without fault of the seller." Thus it is seen, a Roman sale was applicable to all the possible circumstances in

which goods to be transferred could be found, and the respective engagements of buyer and seller (under such a transaction,) were specifically enforced by the appropriate actions.

Although at common law consent alone was sufficient to constitute a valid sale, the statute of frauds has now intervened, and other formalities are prescribed, which must be observed, or what was before a valid transfer of property is now of no validity. The statute, beginning where the common law stopped, requires some one of these solemnities to be added to the transaction before it shall be considered as complete, so as to effect a change of ownership ; and the matter here relied upon, as the statute evidence of the completion of the contract, was the change of possession. This provision of the statute implies, it is said, a delivery of the thing sold on the part of the debtor, and an acceptance of it by the buyer, with an intention on the one side to part with, and on the other to accept the ownership of it; and it is not enough that the mere natural, actual, corporeal possession should be changed, but there must be a change of the civil possession, which is a holding of the thing with the design of keeping it as owner ; aud this brings us to an examination of the instruction complained of, and which resulted in nonsuiting the plaintiff.

The proof given shows (or, at least, conduces to show, which, for the present purpose, is the same thing,) that the thing sold had been delivered in point of fact to the buyer, and the true question in the cause, (indeed the only one that could be raised,) was, whether this change of actual possession was also a change of the civil possession ; or, in other words, whether the hogs were delivered and received by the parties respectively, with the intention of changing the ownership. If the facts were so, the sale was perfect, the title passed, and the loss fell upon the new owner.

It is to be remarked that this is the sale of a specific commodity, the whole drove, and not of a part, to be ascertained by counting out the required number, and therefore, the title passed as soon as the bargain was completed by the delive-

ry. It was not a transaction in relation to the sale of part of a mass, which could not take effect as a present sale, immediately changing the property, until the separation was actually made ; and it is possible some confusion may have arisen here by not clearly distinguishing between the sale of a specific commodity, clearly separated and distinguished from all others, as a specific drove of stock, and of an indefinite commodity, as a hundred barrels of corn out of the party's crib, or a hundred mules out of his drove, when the seller is bound to separate and identify the particular part sold, before it can pass in property to the purchaser.

Nor is there any objection to the validity of this transaction as a present sale, growing out of the supposed uncertainty as to the price. Although there is no sale until the price is settled between the parties, yet it is settled, within the meaning of this rule, when the terms of it are so fixed that the sum to be paid can be ascertained without further reference to the parties themselves ; and, indeed, by the common law, the price is fixed within this rule, even when it appears that the parties have agreed that it shall be the reasonable worth of the thing sold, leaving it to the tribunals to ascertain the amount, if they cannot agree upon it themselves. (Bell on Sales, 18–20. *Acebol* v. *Levy*, 10 Bing. 382.)

This, then, was a present agreement between these parties for the sale of a specific commodity for a price settled between them, so as to be capable of future ascertainment, without further reference to themselves, and, we repeat, immediately passed the title to the buyer, if the ceremony of delivery required by the statute of frauds was complied with, and there having been a delivery in fact, the whole question was, as before remarked, with what intention that delivery was made, whether merely that the hogs might be weighed, neither party being bound in the mean time by what had passed between them, or as the formal completion of the bargain to bind the parties and vest the ownership in the purchaser.

We come now to an examination of the instruction complained

of, the substance of which is, that if the hogs were sold by net weight, to be ascertained by weighing after they were slaughtered and cleaned, then the presumption that the sale was completed by the delivery is met and repelled, and the loss falls on the plaintiff, as owner, unless he shows that the parties intended the sale to be complete upon the delivery. The jury would, no no doubt, have so understood the direction, when they came to apply it to the case, and such, too, we suppose, was the meaning of the court; but we do not concur in this view of the law. Certainly, this circumstance was proper for the jury upon the question of the intention of the parties in changing the actual possession, and might have afforded a very proper topic of comment to counsel, in arguing the question of fact before them; but we do not think any well considered case has gone the length of declaring that it changed the strong natural presumption to be derived from the actual delivery of the property, and imposed upon the other party the necessity of showing that "the parties intended the sale to be absolute and complete before the weighing," and we feel well assured that there is no principle upon which this position can be maintained. We find it frequently repeated in the books, that when any thing remains to be done by the seller, such as counting, weighing or measuring, the title does not pass; and this is certainly correct, when this operation is necessary in order to separate the goods from a larger mass, of which they are part; but that is not this case, and we think that by keeping the distinction between a specific and an indefinite commodity in view, most of the cases upon this subject can be explained, and their apparent conflict reconciled. It is also certainly true that, in determining the question as to the purpose of the parties in changing the actual possession, the fact that the price is to be subsequently ascertained by reference to the net weight, and then paid, is proper to go to the jury; but possession is so much of the essence of property, as it is that alone which enables us to enjoy a thing as property, and the natural connection between property and possession, especially in movables, is so strong, that the

Cunningham *v.* Ashbrook.

presumption arising from a change of actual possession, that it was intended also as a change of the property, is not, in our view, overcome, as a matter of law, by the fact here relied upon, that the thing bargained for was to be paid for by weight, to be ascertained after the delivery.

We shall content ourselves by a reference to a few cases which we consider directly in point, in support of the position we have taken. *Scott* v. *Wills*, (6 Watts & Serg. 368,) was a case of the sale of a raft of lumber at twelve dollars per thousand feet, to be ascertained by measurement. There had been a delivery, and the raft being lost by a freshet, the question was, whether the property passed so as to cast the loss upon the buyer. The court below instructed the jury that " parties may make a sale of goods so as to pass the property by the actual delivery thereof, without first fixing the quantity upon which the price is to be computed," and the Supreme Court approved of the direction, Judge Gibson remarking, " that a sale is imperfect only when it is left open for the addition of terms necessary to complete it, or where it is defective in some indispensable ingredient, which cannot be supplied from extrinsic sources. But when possession is delivered pursuant to a contract which contains no provision for additional terms, the parties evince, in a way not to be mistaken, that they suppose the bargain to be consummated."

*Macomber* v. *Parker*, (13 Pick. Rep. 182,) was a sale of a quantity of brick in a kiln at a certain rate per thousand, to be ascertained by counting, and the court, in delivering its opinion says : " It is true the bricks were to be counted, but that was to be done to enable the parties to come to a settlement of their accounts, and not for the purpose of completing the sale. Taking the whole of Hunting's testimony together, this we think is the reasonable inference to be drawn from it. If the bricks had been actually delivered, there could have been no question that the sale would have been complete, notwithstanding the bricks were to be afterwards counted. The general principle is, that when an operation of weight, measure-

ment, counting or the like, remains to be performed in order to ascertain the price, the quantity or the particular commodity to be delivered, and to put it in a deliverable state, the contract is incomplete, until such operation is performed. (Brown on Sales, 44.) But where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery, and the weighing, or measuring or counting afterwards would not be considered as any part of the contract of sale, but would be taken to refer to the adjustment of the final settlement as to the price. The sale would be as complete as a sale upon credit before the actual payment of the price. Nothing can be found in any of the numerous cases on this point, which militates against this position."

The remarks of the same court in *Riddle* v. *Varnum*, (20 Pick. 283–4,) to which we have been referred by the counsel for the respondents are not intended to conflict with what had been previously determined, but expressly affirm that decision.

It is true the court say that "the party affirming the sale must satisfy the jury that it was intended to be an absolute transfer, and all that remained to be done was merely for the purpose of ascertaining the price of the articles sold at the sale agreed upon." And of this there can be no doubt, but yet that is a matter for the jury, and it is not intimated in this case that when there is an actual delivery, the jury cannot be allowed to infer such intention without some additional evidence.

These questions generally arise when the thing sold has perished, and the contest is upon whom the loss shall fall, and it may not be improper here to remark that, notwithstanding the marked difference between a Roman and a common law sale, in other particulars, when a loss occurs, it falls upon the same person under either system. Under our law, the maxim is that the owner bears the loss, a rule, it would seem, of universal application, *res perit domino*. Under the Roman law, the debtor of a specific thing was not answerable for its loss, when it perished in his hands without fault, and when there had been a purchase of a specific commodity, although the property was

not changed until delivery, the seller, by the bargain, became debtor to the buyer of the particular thing bought, and so not liable if it perished without fault.

We repeat what we have before said, it is a question for the jury. If the delivery were for the purpose of passing the property, it had that effect, although the price was to be afterwards ascertained and paid according to the net weight, and there is no rule of law that, under such circumstances, the presumption arising from the delivery is met and repelled, and that other evidence becomes necessary in order to make out a *prima facie* case of a present sale. The seller has a right, notwithstanding the bargain, to retain his property till he is paid, unless he agrees to allow the purchaser a credit (the bargain for an immediate transfer of property implying a present payment of the price,) and hence, when there is no understanding as to the time of payment other than what is implied in the postponement of it until the quantity of the thing sold is ascertained in the manner indicated in the contract, this circumstance is certainly entitled to consideration with the jury, in determining the character of the delivery, which, if intended to pass the thing in property, deprives the seller of his security upon it for the price, at the same time that it throws upon the buyer the future risk. The judgment is reversed, and the cause remanded.