Pilkington v. Trigg.

were adduced to prove the existence of the alleged partnership. It is deemed unnecessary to set forth the evidence and instructions bearing upon this question.

*Ryland & Son*, for appellant.

I. Though plaintiff and McCain were not partners as between themselves, they were partners as to third persons.

*Hall* and *Loan*, for respondent.

---

PILKINGTON, Appellant, v. TRIGG & PHILLIPS, Respondents.

1. To maintain an action for the possession of specific personal property, the plaintiff must be the owner, or be entitled to the possession, of the specific property claimed.

2. A. purchased certain property of B. and gave to the latter in payment therefor drafts on St. Louis; these drafts B. delivered to C., a banker, for collection; C. received payment of the same and placed the amount collected to the credit of B. *Held,* that A. could not, in an action for the recovery of specific personal property, recover the amount so collected by C.

on the ground that he had been induced to make said purchase by fraudulent representations on the part of B.; nor could such an action be maintained, although C. should, after its commencement, separate from the general mass of moneys in his possession the amount so collected for B. and should place the same in a bag marked " A. or B."

*Error to Cooper Court of Common Pleas.*

*Stephens & Vest* and *Jewett*, for appellant.

I. The drafts having been obtained by fraud their transfer by Pilkington passed no title to Phillips, and Pilkington could recover their proceeds so long as they could be identified. no matter how many changes they might undergo. (1 Mo, 46 ; 26 Mo. 494 ; Story's Eq. § 437, 439, 513, 1256 ; 5 Dana, 196.) The plaintiff instituted the proper form of action. Our statute providing for the claim and delivery of personal property is intended as a substitute for the common law remedies of detainer, replevin and trover ; and when these actions could be maintained the statutory action like the present can also be had. (See 5 How. Pract. Rep. 327 ; Voorhies, N. Y. Code, 152 and note ; 1 Chit. Pl. 166 ; 17 Mass. 606 ; 23 Maine, 196 ; R. C. 1855, 1242.) It can not affect plaintiff's right of action to grant that the money ($950) was placed in a bag and marked as stated in the amended petition since the service of the writ. Plaintiff had a right under the new practice to file an amended or supplemental petition setting up new facts or praying for a new or different relief from that asked in his first petition. (R. C. 1855, p. 1253 ; 8 How. Pract. Rep. 48 ; 9 id. 140 ; 3 How. Pract. Rep. 378.) In this case, after the amended petition was filed, the defendants answered denying its allegations, and went to trial upon this issue. They made no motion to strike out the allegation of facts since the commencement of the suit, but go to trial upon them. The evidence as spread upon the record establishes beyond all doubt a case of gross fraud on the part of Phillips in the sale of the book to Pilkington. The sale being void on account of fraud, if the notes or drafts given for the book had existed at the commencement of this

suit in the hands of Trigg, the plaintiff would have been entitled to them on disaffirming the sale.  Plaintiff being entitled to the notes or drafts, may pursue them through every mutation, or claim the property for which they were exchanged, or the proceeds when the property is irreclaimable, so long as the property or the proceeds remain in the hands of parties not *bona fide* purchasers, who have paid over the consideration.  (DeVoise v. Sandford, 1 Hoffm. Ch. 192 ; 2 Story Com. on Eq. § 1232.)  The moment Trigg was notified by plaintiff that the sale was rescinded on account of fraud, he, as also Phillips, became mere trustees or stakeholders for the benefit of plaintiff.  (2 Story Eq. § 1265.)  The evidence showing that at the commencement of the suit Trigg had the proceeds of the notes in his hands, having set apart a certain sum and marked it as the proceeds of said note, it is conclusive on the defendants that the sum so marked is the identical money received for the note.

*Adams*, for respondents.

I.  This record presents the strange anomaly of a suit for a specific chattel, in the shape of a bag of gold conceived and brought forth into existence long after the commencement of the suit.  This progeny, created after leave was given to file an amended petition, was a mere abstraction, and was not and could not form the subject of this litigation.  How could a debt due from Trigg to Phillips be converted into a specific chattel in the shape of a bag of gold, without the knowledge or consent of the creditor, and be substituted as the cause of action ?  The bag of gold is still the property of Trigg and the debt from Trigg to Phillips still remains unpaid.  No evidence was offered or given that had the slightest tendency to prove the case laid in the petition.  The evidence looked alone to a transaction between the plaintiff and defendant Phillips about the sale of a document.  Trigg was in nowise connected with this matter.  Even if a debt could be converted into a specific chattel, the plaintiff would have no right to do so after the commencement of his suit and

make it the foundation of the action. (See Norcum v. D'Œnch, 17 Mo. 114.)

Scott, Judge, delivered the opinion of the court.

This case is not affected by the principle that money or property obtained under color of a fraudulent contract may be reclaimed upon the rescision of the contract by the injured party. We must have an eye to the form of the action in considering the plaintiff's right to a recovery. The petition alleges that the plaintiff is the owner of and is entitled to the possession of the following specific personal property, viz.: Nine hundred and fifty dollars in specie of the value of $950, which said property is in a bag marked " B. Pilkington or W. T. Phillips." It is. alleged for the plaintiff Pilkington that he was induced by the fraudulent misrepresentations of the defendant Phillips to purchase a book, which was supposed to contain valuable information in relation to the officers of the Virginia line who were entitled to bounty lands from Congress, but which was in reality altogether useless. The plaintiff paid Phillips for the book by drafts on bankers in St. Louis, which were delivered to the defendant Trigg by Phillips for collection, which being collected were placed to the credit of Phillips on the books of Trigg. Pilkington, conceiving that he was defrauded, gave notice to Trigg not to pay over the money. At this stage of the transaction, the plaintiff sued the defendants, alleging that he was entitled to the following specific property, viz., one thousand dollars in gold, of the value of one thousand dollars, which the defendants wrongfully detain from him. The petition having been held bad on demurrer, it was amended as it is first above stated: the plaintiff's counsel, after the demurrer and before the amendment, having induced Trigg to put nine hundred and fifty dollars in a bag and mark it as is stated in the amended petition.

It would be remarkable if the rights of parties could be made to depend upon contrivances of this kind. This is

evidently an attempt to sue a debtor of the creditor's debtor in an ordinary action at law. It is clear from the testimony that neither the plaintiff nor the defendant Phillips had any right to the specific money for which this suit was instituted. Trigg could not make it the money of Phillips by putting it into a bag without his consent; and if he could even do so, on no principle could it be done after the suit was brought, thereby creating a cause of action after the institution of the suit. The doctrine of courts of equity which sanctions the pursuit of a security or its proceeds in the hands of every one affected with notice of the fraud or trust, has nothing to do with this case. The plaintiff has sued to recover specific personal property, and it is clearly shown that he has no title to it. How then can he expect to recover? The suit was not brought in a manner which admitted the application of any equitable doctrines, even if the case had been one to which such doctrines had been applicable. The action was in such a form that an inquiry into the validity of the sale on the ground of fraud was altogether irrelevant, for even admitting the sale was void for fraud, that would give no title to the specific property sued for. Affirmed; Judge Richardson concurs. Judge Napton absent.