JOHN R. HAMILTON, ADMINISTRATOR, Respondent, v.
JEREMIAH V. CLARK, Appellant.

Kansas City Court of Appeals, April 11, 1887.

1. REPLEVIN—FAILURE TO FILE AFFIDAVIT OR GIVE BOND—EFFECT OF.
Although, in an action of replevin, neither an affidavit is filed nor
bond given, this does not hinder the action, but only prevents
plaintiff getting the property until after the judgment in his
favor.

2. ———— FORM OF JUDGMENT—CHARACTER OF THE ACTION—CASE
ADJUDGED.—The action of replevin has for its primary object the
recovery of *specific* personal property, and where the judgment, as
in this case, is an ordinary judgment (as if the action had been
*assumpsit*), it is not responsive, either to the petition, or the evi-
dence under it, and a motion *in arrest* should be sustained.

3. ———— MONEY—HOW DESIGNATED IN ORDER TO BE THE SUBJECT OF
ACTION OF REPLEVIN.— Money is not the subject of an action of
replevin, unless it is marked, or designated in some manner, so
as to become specific as regards the power of identification, such as
being in a bag or package.

4. GIFTS CAUSA MORTIS AND INTER VIVOS—RULE CONCERNING AS TO
DELIVERY.—In the case of gifts *causa mortis*, and also of gifts *inter
vivos*, there must be *actual delivery*, and it is essential, in either
case, that there should be such a change of possession as to put it
out of the power of the giver to re-possess himself of the thing
given. There was no such *change of possession* in this case.

5. SALE OF GOODS—DELIVERY OF—NOT NECESSARY IN SALE OF SPECIFIC
CHATTEL.—Where there is a sale of goods, generally, no property
in them passes until delivery, because until then the *very goods sold*
are not ascertained. But where, by the contract itself, the *vendor
appropriates to the vendee a specific chattel*, and the latter thereby
*agrees to take that specific chattel*, and to pay the stipulated price,
the parties are then in the same situation as they would be *after
a delivery* of goods in pursuance of a general contract. The very
*appropriation* of the chattel is *equivalent to delivery* by the
vendor, and the *assent* of the vendee to take the *specific chattel*,
and to pay the price, is *equivalent* to his *accepting possession ;* the
effect of the transaction is to vest the property in the bargainee.

6. ———— SELLER AND PURCHASER—WHEN PROPERTY PASSES—CASE
ADJUDGED.—Where anything remains to be done between the

seller and purchaser, before the goods are delivered—as separating
the specific quantity sold from a larger mass ; or identifying them,
when they are mixed with others—a present right of property
does not attach in the purchaser. *Held,* that in this case no separation is required.

APPEAL from Ray Circuit Court, HON. GEORGE
W. DUNN, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion.

JOSEPH E. BLACK, for the appellant.

I.   The sale and transfer to appellant, by Hiram M.
Clark, prior to his death, by an *instrument of writing,*
for a valuable consideration paid in full therefor of the
money or property in controversy, vested in appellant
the *ownership and right to the possession* of the same,
and Hiram M. Clark, in retaining the same, held it as
bailee, and defendant, after the said Hiram M. Clark's
death, in taking the same, was guilty of no wrong, and
did not thereby become administrator *de son tort,* and
had the same right to take and retain said property as
one who had loaned another his horse has to take his
own property after the death of the party to whom the
horse was loaned.   2 Schouler's Personal Property, 227.

II.   *Money* is property, and is so treated in the
petition of respondent and was conveyed, by the contract
in evidence, to appellant, and the same rules govern in
the conveyance as would apply in the conveyance of
other personal property.   1 Schouler's Personal Property, 84.

III.   The judgment vested the ownership and
possession of the property in controversy in the respondent when the same was conveyed to appellant by a contract in writing, which could not be set aside  except in
a direct proceeding for that purpose, and *there is no
evidence* tending to show that said contract was not
founded in good faith, or that there was want of a valua-

ble consideration, or that Hiram M. Clark did not intend to convey the property in controversy, or that it is not included in its terms, or that Hiram M. Clark did not execute the same, or that the consideration was inadequate or was not paid, or that there was want of legal capacity to convey, or that the contract operated upon subject matter not susceptible of conveyance, or that it was uncertain or ambiguous, therefore, the contract unimpeached by the evidence remains firm and effectual and conveys the property or money to defendant. *Hart v. Railroad*, 65 Mo. 509; *Carter v. Abshin,.* 48 Mo. 300.

IV. This *form of action* is not the correct proceeding, if the theory of respondent is correct, viz: That appellant is an administrator *de son tort*, as the judgment determines that respondent is the owner of the goods in determining the question whether appellant was guilty of wrong in taking his own property. The proceedings should have been in *the probate court* under the statute providing for recovery of property *unlawfully detained*. 1 Rev. Stat., sects. 75 to 78, inclusive.

V. Evidence is admissible to prove the *actual consideration*, although the contract of sale specifies a consideration, and the *real consideration*, as appears in evidence, was taking care of said Hiram M. Clark, now deceased, during his prolonged sickness. *Bartlett v. Matson*, 1 Mo. App. 151; *Nedyidek v. Meyer*, 46 Mo. 600.

VI. The fact that appellant had the contract in possession, as evidenced by his offering the same in evidence, is conclusive proof that he was rightfully in possession thereof, and that the same was delivered to him by said Hiram M. Clark during his lifetime, there being no evidence to the contrary.

VII. The evidence shows that Hiram M. Clark's sickness was very prolonged; that it was extremely offensive in its character, from the *effluvia* arising from his rapidly wasting body; that he, a great part of the time, required attention day and night from appellant

and family ; that appellant and family were in straitened circumstances, and, by reason of the limited room of their dwelling, were compelled to be confined in a small room with said Hiram M. Clark during his long sickness ; that the health of appellant's wife was completely broken down by her watchfulness, solicitude, care and exposure in her attentions to said Hiram M. Clark, and has never recovered since ; and said Hiram M. Clark, wishing to fully recompense them therefor, so far as his means would admit, and in consideration of said services, as agreed between the parties, made the contract or conveyance in evidence, and to defeat his equitable intentions, upon grounds purely technical, would be a mockery of justice.

VIII. Attention is called to other points in declarations of law asked by appellant, not herein presented.

C. T. GARNER & SON, for the respondent.

I. The case, as presented upon the record, shows clearly a case on the part of the defendant, by fraudulent means, to take the entire estate of his brother, and appropriate it, thereby depriving his other brothers and sisters from any share in the estate. If he had a *bona fide*, just claim for services and attention rendered deceased, while sick, the appellant should present his claim therefor to the probate court, for adjudication and allowance, where justice could be done to both parties.

II. There is no evidence that there was any contract for services rendered deceased in taking care of him while sick.

III. To constitute a *donatio mortis causa* there must be an *executed* gift, accompanied by an *actual delivery*, and so, under a contract for *services rendered* while sick, there must have been a *change of possession*. The *money,* before the title *passed*, must have been *delivered*. The following authorities are cited in support of respondent's theory of the case : *Spencer v. Vance,*

57 Mo. 427 ; *Atkins v. Hulse,* 62 Mo. 597 ; 1 Parsons on Cont. [5 Ed.] 234; *Trorlect v. Merjenecker,* 1 Mo. App. 482 ; 42 New Hampshire, 114; *Martin v. Ramsey,* 5 Humph. (Tenn.) 349 ; *Payne v. Powell,* 5 Bush (Ky.) 248.

IV.    Gifts and contracts made *causa mortis* are not favored in law, are a fruitful source of litigation, create a strong temptation to the commission of fraud, and should not be sustained.

Ellison, J.—This is an action of replevin, based on the following petition :

"Plaintiff states that he is public administrator of Ray county, Missouri, having in charge the estate of Hiram M. Clark, deceased ; that, as such administrator of said estate, he is the owner, and entitled to the possession of, the personal property, to-wit : Eight hundred and thirty-five dollars, which the defendant wrongfully detains from the plaintiff ; that plaintiff, on the ——— day of April, demanded of defendant the possession of said property aforesaid. Plaintiff, therefore, asks judgment for eight hundred and thirty-five dollars, with six per cent. interest on the same from the time of the demand aforesaid to the rendition of judgment, one hundred dollars damages for the detention thereof, and the costs in this behalf expended."

The answer claimed title to the money.

The finding was for the plaintiff, the judgment being in the ordinary form of a money judgment : "The court doth find the issues for the plaintiff, and doth find the amount due plaintiff by the defendant to be the sum of eight hundred and thirty-five dollars. It is, therefore, considered and adjudged, by the court, that the plaintiff recover of the said defendant, as well the said sum of eight hundred and thirty-five dollars, as also his costs," etc.

There was no affidavit filed, or bond given ; this, however, does not hinder the action, but only prevents

plaintiff getting the property till after judgment in his favor. *Eads, Adm'r, v. Stephens*, 63 Mo. 90. There was no evidence as to damages; the only thing tried being the ownership of the money. The judgment in this cause cannot stand.

I. In the first place, it is not justified by the action or the evidence. It is an ordinary judgment, as if the action had been *assumpsit*, instead of replevin. The action of replevin has for its primary object the recovery of *specific* personal property. The judgment here is not responsive to either the petition, or the evidence under it. The defendant's motion in arrest should have been sustained.

II. In the next place, the petition fails to state a cause of action. Money is not the subject of an action of replevin, unless it be marked, or designated in some manner, so as to become specific as regards the power of identification, such as being in a bag, or package. Wells on Replevin, sect. 177; *Ames v. Miss. Boom Co.*, 8 Minn. 467; *Sager v. Blain*, 44 Hand. (N. Y.) 445; *Skidmore v. Taylor*, 29 Cal. 619. This is the view had by Scott, J., as appears in *Pelkington v. Trigg* (28 Mo. 95). It is so stated to be the law by Blackstone (vol. 2, p. 151). In order to have stated a cause of action, the money should have been described, so as to give it some individuality. I am not aware of any decision upholding a replevin suit for money, without some specific description for its identification. It is true, this action is permitted in this state for grain, which has been mixed in bulk with other grain (*Kaufman v. Schilling*, 58 Mo. 218; 62 Mo. 402), but those cases are not applicable to this. I apprehend, also, that the description in those cases was such as afforded an identification of the particular lot of grain sought to be recovered, although each particle or kernel might not be the subject of identification.

III. It appears, from the evidence in this cause, that

the intestate and defendant were brothers; that defendant and his family moved to the state of Colorado, some time in 1883, and were joined by the intestate in the state of Kansas, who accompanied them to Colorado ; that the intestate was sick, and was taken care of, boarded, and nursed, by defendant and his family, for a period of fourteen or sixteen months. Near two weeks prior to his death, he executed the following instrument :

"Morrison, Jefferson County, Colorado.

"Personally appeared before me Hiram M. Clark to me known as the person whose signature is hereunto appended, and acknowledged that he has done so of his own free will and accord, viz : I have this day sold to J. V. Clark one span of mules, wagon and harness ; also, all my other effects, of every nature and kind, both notes, money, or choses in action, for the sum of one dollar, in hand paid by said J. V. Clark, the receipt of which is hereby acknowledged.

"H. M. Clark.

"Subscribed and acknowledged before me, this twenty-third day of September, 1884.

"[SEAL.]        P. J. Nugent,
"Witness : M. M. Nay.        Notary Public."

That, upon his death, defendant took the money, eight hundred and thirty-five dollars in amount, which was in a pocket book, under the pillow of the bed on which he died. A portion of this money defendant spent for expenses of his return to Missouri, a portion in bringing the body of his brother to this state, and a portion he had yet. There was evidence tending to show that defendant had, at the institution of this suit, five hundred and twenty-five dollars of this money "in the house" with him. Some witnesses stated, on part of plaintiff, that it was worth from three to five dollars per week to wait on deceased, but they did not know what it was worth in Colorado. Witnesses in behalf of defendant stated it was worth from five to fourteen dollars

a week, in Colorado, to attend deceased in the manner defendant and his family were compelled to do, on account of the nature of his sickness. There was no direct testimony of any agreement between deceased and defendant as to the amount of his compensation, or whether he was to be compensated at all.

The court refused all of defendant's instructions; among others, one declaring that if the court, sitting as a jury, believed from the evidence that defendant was the owner of, and entitled to the possession of the money in controversy, the judgment should be for defendant. It is probable from this, that the court was of the opinion that defendant had no standing in court, though his evidence was believed to be the facts in the case. No declarations of law were asked or given for the plaintiff, but it is probable the court regarded the transaction as to the money, as a gift, *causa mortis*, to defendant, not completed by delivery. If it was a gift *causa mortis*, no just complaint could be made against the action of the court, but we do not consider the evidence makes it such, as a matter of law. The writing executed by deceased, in connection with the oral testimony, tends to show a valuable consideration sufficient to support a sale between the parties. Though the consideration named in the written paper is stated to be one dollar, yet it may properly be shown to be more than that sum. 1 Greenl. Evid., sects. 305, 285; *Moore v. Ringo*, 82 Mo. 468. It is true there is no direct evidence of any agreement that defendant should be compensated for his care and board of deceased, yet the law will imply a promise on deceased's part to pay value for such care and board. These parties were brothers, but such relation does not impose a legal obligation upon one to support the other. I make these observations merely to show that defendant's evidence tended to show a purchase of the property mentioned for value. If it is to be contended that defendant's services were a gratuity, that his care of deceased sprang wholly from brotherly affection, without intention

or purpose of compensation, such evidence would be proper on a re-trial.

The supposition that the court below treated this transaction between these parties as a gift, *causa mortis*, is fortified by the position taken by counsel for plaintiff in this court. We take no issue as to the correctness of the proposition that there must be actual delivery in such case, and such, too, is the rule as to gifts *inter vivos*. It is essential, in either case, "that there should be such a change of possession as to put it out of the power of the giver to re-possess himself of the thing given." 1 Parsons on Contracts, 234, 237. It is very clear, from the testimony preserved, that there was no such change of possession of this money as will uphold a gift. Cases justifying this assertion are numerous and well understood, and need not be set out here.

IV. But it may be urged, that even though this be regarded as a transaction on a valuable consideration, yet there was no delivery of possession sufficient to make of it a legal sale. As the transaction occurred in Colorado, the nature and effect of it should be governed by the law of that state, but no question in this regard is raised by either side. The transaction being evidenced by a writing is thereby taken out of the statute of frauds, and leaves the matter to be considered on common law grounds.

Shepherd's Touchstone states the common law rule as follows: "If one sells me his horse, or any other thing, for money, or other valuable consideration, and, first, the same thing is to be delivered to me at a day certain, and by our agreement a day is set for the payment of the money; or, secondly, all; or, thirdly, part of the money is paid in hand; or, fourthly, I give earnest money, albeit it be but a penny, to the seller; or, lastly, I take the thing bought by agreement into my possession, where no money is paid, earnest given, or day set for the payment; in all these cases there is

*a good bargain and sale of the thing to alter the property thereof."*

So, in *Dixon v. Yates* (5 B. & Ad. 313, 340), Park, J., said: "I take it to be clear that, by the law of England, the sale of a specific chattel passes the property in it to the vendee without delivery. Where there is a sale of goods, generally, no property in them passes till delivery, because, until then, the very goods sold are not ascertained. But where, by the contract itself, *the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel,* and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of a general contract. The very appropriation of the chattel is *equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and to pay the price, is equivalent to his accepting possession; the effect of the contract, therefore, is to vest the property in the bargainee."*

The principles so quoted are stated by Benjamin, in his work on Sales, to be the "undoubted law at the present time." So they are approved in numerous decisions in the different states of this country. *Morse v. Shearman,* 106 Mass. 430, 433. Delivery was not essential to the validity of a common law sale. *Cunningham v. Ashbrook,* 20 Mo. 553; *Williams v. Evans,* 39 Mo. 201. From the foregoing it is clear that delivery was not necessary to the validity of the transfer evidenced by the writing above set out.

V. But it will be observed that what has been said has reference to sales of specific property, capable of specific appropriation at the time of the sale, and the question is, was there an appropriation of the money in controversy?

Benjamin, in his work on Sales, section 352, lays down the rule that when the agreement of sale is "of a certain quantity of goods in general, without specific identification of them, or an appropriation of them to the

contract, as it is technically termed, the contract is an executory agreement, and the property does not pass." And this is, perhaps, without exception, the rule maintained in England.

In this country there is no conflict in the authorities. I take it, that the conflict is not so much as to the correctness of the rule stated by Benjamin as in determining what amounts to an " appropriation." In England and some of the American states there must be a specific identification of the very property sold, as distinguished from any other of like kind or value. But a distinction is made by many courts which strike me as sound, viz : It is not necessarily the law that, upon sale of a part of a large bulk, the contract remains executory until the portion sold is separated from the mass. " If I sell ten out of a drove of one hundred horses, to be selected, whether by myself or by my vendee, no title can pass until the election is made. This rule prevails wherever the nature of the article sold is such that a selection is required, whether expressly provided for or not by the terms of the contract. If the articles differ from each other in quantity, or quality, or value, the necessity of the selection is clearly implied. In all such cases the subject matter of the contract cannot be identified until severance, and the severance is necessary in order that the subject matter of the contract may be made certain and definite. But where the subject matter of the sale is part of an ascertained mass of uniform quantity and value, no selection is required; and in this class of cases it is affirmed, by authorities of the highest character, that severance is not, as a matter of law, necessary in order to vest the legal title in the vendee to the part sold." *Chapman v. Shepherd,* 39 Conn. 413.

It is remarked in *Ober et al. v. Carson, Ex'r* (62 Mo. 209), that, "where anything remains to be done between the seller and purchaser, before the goods are to be delivered, as separating the specific quantity sold from a

larger mass, or identifying them when they are mixed with others, a present right of property does not attach in the purchaser." Whether this, and what is said in *Cunningham v. Ashbrook* (20 Mo. 553), should be taken as a disavowal of the distinction referred to, ·need not now be considered. In this case, the sale is of *all* of the vendor's money, etc. It is not a part of a whole. It requires no separation.

The vagueness of the description may be urged against the validity of the sale, but it must be remembered that this contest is between the parties to the bill of sale and the rights of third persons are not involved. Besides, whatever vice lay in the description has been cured by the actual possession taken by defendant. There is no dispute here as to the identity of this property, or of its being that of the intestate at the date of the bill of sale; indeed, that is the claim of both parties.

The judgment is reversed and the cause remanded. The other judges concur.