THE STATE v. SWIFT & COMPANY, a Corporation,
and F. A. HUNTER, Manager, Appellants.

Division Two, February 16, 1918.

1. **SALE: When Complete.** Where anything remains to be done be-
tween the parties before the property is delivered, as separating
the specific quantity from a larger amount, or identifying it, the
sale is not complete; but after the separation for the purpose of
delivery, when there is nothing further to be done except to de-
liver the goods, the sale is complete and the title passes to the
vendee.

2. ———: ———: **Future Payment: Delivery Charges.** Where a con-
tract of sale is made for a specific article and there is nothing
more to do except to deliver it and collect the price, the con-
tract of sale is complete without delivery and without payment,
even though the bill accompanying the goods bears a mark mean-
ing that the delivery charges, as well as the cost of the goods,
are to be paid by the purchaser.

3. **OLEOMARGARINE: Keeping for Sale.** A corporation in St. Louis
engaged in the grocery business, ordered, by telephone, a hun-
dred and fifty pounds of oleomargarine from defendant's plant in
East St. Louis, Illinois. That amount, being five thirty-pound cases,
was separated from the general stock, loaded into defendant's
wagon, hauled to the grocery store in St. Louis, and there de-
livered, the price, including the delivery charges, being charged to
the grocer, and later paid. The commodity was of a character
condemned by the statute, and the charge was, not that defendant
sold the same in this State, but "did unlawfully and wilfully of-
fer for sale and keep on hand for the purpose of sale" to said
grocery company said substance. *Held,* that the sale was complete

before the delivery of the goods, and that the defendant did not keep them on hand for sale in St. Louis at any time after said sale was complete, and a judgment convicting the defendant of the charge of keeping the goods for sale in this State must be reversed.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Calvin N. Miller,* Judge.

REVERSED AND REMANDED.

*A. & J. F. Lee* and *James A. Waechter* for appellants.

The court erred in refusing to discharge the defendants at the close of the State's case, because: (a) the evidence showed without conflict that the defendants did not "in the city of St. Louis, State of Missouri, on the fourth day of October, 1915 [or any other day], unlawfully and wi¹fully offer for sale and keep on hand for the purpose of sale to Stocker Brothers, a substance which was then and there composed of animal fat," etc.; (b) the evidence clearly showed that the sale in question was effected and the title to the goods passed to Stocker Brothers in Illinois; and (c) there was no proof on the part of the State of any sale by appellants in Missouri. State v. Rosenberger, 212 Mo. 650; State v. Wingfield, 115 Mo. 428; Kerwin & Co. v. Doran, 29 Mo. App. 397; Glass v. Blazer, 91 Mo. App. 564; Cunningham v. Ashbrook, 20 Mo. 553; Bank v. Smith, 107 Mo. App. 178; Ober v. Carsons, Executor, 62 Mo. 209; State v. Newell, 140 Mo. 282; Longsdorff v. Meyers, 171 Mo. App. 256; Bass v. Walsh, 39 Mo. 192; Wheless v. Grocer Co., 140 Mo. App. 572; Benjamin on Sales (5 Ed.), 2; State v. Scott, 189 S. W. 1191; Garrbracht v. Commonwealth, 96 Pa. 449; Commonwealth v. Hess, 148 Pa. 98; Williston on Sales (1909 Ed.), 353-547; Williams v. Evans, 39 Mo. 234.

*Frank W. McAllister,* Attorney-General, and *S. E. Skelley,* Assistant Attorney-General, for the State.

The court properly refused to discharge defendants at the close of the State's case. (1) There was no ma-

terial variance in the seeming discrepancy between the allegations of the information and the proof offered by the State in support thereof. (a) To constitute a variance, there must be such a lack of harmony between the allegations and the evidence as to render the proof inadequate. 2 Bishop on New Criminal Procedure (2 Ed.), sec. 484a, 3. (b) Where the substance of the issue is proved, no variance is encountered. 2 Bishop on New Criminal Procedure (2 Ed.), sec. 488b, 1; 22 Cyc. 455-456, 481; State v. Mohoney, 122 Iowa, 168; Adams v. People, 25 Colo. 532; State v. Brown, 82 N. C. 585. (c) Evidence of delivery by defendants of colored oleomargarine to a customer is proof of "sale" or "offer for sale" in violation of the statute. People v. Koch, 19 Misc. 634, 44 N. Y. Supp. 387; People v. Dairy Co., 122 N. Y. Supp. 294; Willis v. Oil Co., 50 Minn. 296; Commonwealth v. Gordon, 159 Mass. 8; People v. Lewis, 122 N. Y. Supp. 1025. (2) Uncontradicted evidence of a delivery of colored oleomargarine by defendants to a customer in the city of St. Louis is sufficient to make out a prima facie case against defendants. People v. Koch, 19 Misc. 634, 44 N. Y. Supp. 387; People v. Dairy Co., 122 N. Y. Supp. 294. (a) Unless there is an absence of substantial evidence to sustain the verdict, the finding of the jury will not be disturbed on appeal. State v. Chenault, 212 Mo. 132-137; State v. Sassaman, 214 Mo. 737; State v. Burton, 214 Mo. 316; State v. Maurer, 255 Mo. 168. (3) The evidence clearly showed that the sale in question was consummated and that property in the goods passed to the vendee in Missouri. (a) Where, by the terms of the contract of sale, the seller is required to send, forward or deliver the goods to the buyer or to some one for him, at a designated place, title thereto does not vest in the buyer until the transportation is at an end, or the goods are delivered in accordance with the contract. 35 Cyc. 302-303; Benjamin on Sales (5 Ed.), pp. 322-323; Williston on Sales, sec. 280, pp. 405-407; Tiffany on Sales (2 Ed.), p. 156; 24 Am. & Eng. Ency. Law, p. 1050; Henning v. Powell, 33 Mo. 468; Hance v. Railway, 62 Mo. App. 63; Taussig v. Mill Co.,

124 Mo. App. 209; Scharff v. Meyer, 133 Mo. 448; Metal Co. v. Daughetry, 204 Mo. 82; Milling Co. v. Kramer Bros., 71 Kan. 468; Commonwealth v. Adair, 89 S. W. (Ky.) 1130; Hogins v. Combs, 102 Ky. 165; Lumber Co. v. Railway, 74 N. W. 670; Taylor v. Cole, 111 Mass. 363; Buckingham v. Drake, 112 Fed. 270. (b) The use of such words as "sold" and "purchased" in the invoice, order or other evidence of transactions concerning the transfer of personal property is not conclusive evidence of completed contract, and does not necessarily imply a change of title in the goods. Iron Co. v. Mfg. Co., 80 Fed. 878; Gallup v. Sterling, 49 N. Y. Supp. 945; Blockwood v. Packing Co., 76 Cal. 212; Shainwald v. Cody, 92 Cal. 83; Brooks v. Libby, 86 Me. 151.

WHITE, C.—The Assistant Prosecuting Attorney of St. Louis Court of Criminal Correction filed information in that court charging that the defendants "did on the 4th day of October, 1915, unlawfully and wilfully offer for sale and keep on hand for the purpose of sale to Stocker Brothers, a corporation, a substance" which is described as composed of animal fat, etc., and colored in imitation of butter. The charge is a violation of section 651, Revised Statutes 1909. The case was first appealed to this court and transferred to the St. Louis Court of Appeals for want of jurisdiction. On a hearing, a majority of the St. Louis Court of Appeals held that the evidence sustained the verdict of guilty as charged in the information, but Judge REYNOLDS of that court, dissenting, caused the same to be certified to this court on the ground that the majority opinion was in conflict with the decision of the Kansas City Court of Appeals in the case of State v. Scott, 189 S. W. 1191, and with the decision of this court in the case of State v. Rosenberger, 212 Mo. 648.

The evidence shows that the defendant Swift & Company had what is called a "plant" in East St. Louis, Illinois, and that the defendant Hunter was manager of the business of that corporation at that place. Stocker

Brothers was a corporation engaged in the grocery business in the city of St. Louis, Missouri. On October 4, 1915, someone representing Stocker Brothers in St. Louis called Swift & Company in East St. Louis on the telephone and ordered a hundred and fifty pounds of colored Lincoln oleo. That amount of that commodity, being five thirty-pound cases, was then separated from the general stock, loaded into a wagon belonging to Swift & Company, hauled to Stocker Brothers' store in St. Louis, Missouri, and there delivered; the price for the same was charged to Stocker Brothers by Swift & Company and the bill was paid November 26, 1915.

There is no dispute that this commodity was of a character condemned by the statute. The defendants were arrested on the information above set out, with the result as mentioned. It was held by a majority of the St. Louis Court of Appeals that the oleomargarine in question was kept on hand by the defendants in the city of St. Louis for the purpose of sale. While the statute is leveled at a sale of oleomargarine, colored so as to resemble butter, as well as keeping the same on hand for sale, the information does not charge a sale, but charges the keeping on hand and offering for sale.

This case differs from the case of State v. Rosenberger, 212 Mo. 648, which concerns the sale of liquor by a firm in Kansas City on an order from a dealer in Webster County, Missouri, a local option county. The liquor was delivered to the railroad and shipped C. O. D. It was held that the sale took place in Kansas City and not in Webster County, and, therefore, was not in violation of the Local Option Law. The Rosenberger case was followed in the Scott case and in other cases where liquor was the subject of the sale. In those cases delivery to a carrier C. O. D. was held to be delivery to the purchaser. In this case, Swift & Company sent their own wagon with the oleomargarine to Stocker Brothers' place of business in St. Louis. The bill accompanying the goods bears the mark C. A. F. E., which was explained by Mr. Hunter to mean cost of goods and delivery charg-

es; that the price paid by defendants included those items.

The rule in this State in sales of this character is that where anything remains to be done between the parties before the property is delivered, as separating the specific quantity from a larger amount, or identifying it, the sale is not complete; but after the separation for the purpose of delivery, when there is nothing further to be done except to deliver the goods, the sale is complete and the title passes. [Bank v. Smith, 107 Mo. App. 1. c. 190; Longsdorff v. Meyers, 171 Mo. App. 255.] The only thing that was lacking in this case was the separation of the goods from the general stock. After they were separated and segregated by placing them in the wagon for the purpose of delivery it would look as if the contract of sale was complete at that time, and title passed, as would have been the case if Swift & Company had had only five cases of oleomargarine and Stocker Brothers had been in the store at the time, designated the five cases, and agreed upon the terms of purchase.

It seems to make no difference that the goods were not paid for at the time, but charged to the purchaser's account. It is held usually that where a contract of sale is made for a specific article to be charged for and where there is nothing more to do except to deliver it and collect the price, the contract of sale is complete without delivery and without payment. [Commonwealth v. Hess, 17 L. R. A. (Pa.) 176; State v. Davis, 60 S. E. (W. Va.) 584.] In the Hess case the seller conducted a wholesale liquor business at a place where it was lawful to do so, but delivered the liquor in question to the purchaser in territories where it was unlawful, and it was held that the sale was complete at the seller's place of business where the goods were separated from the general stock and the price charged to the purchaser.

For the purpose of this case it is not necessary to hold that the sale under consideration was complete in the State of Illinois. The defendant is charged, not with selling but with keeping the forbidden commodity

on hand for the purpose of sale, and it becomes impor-
tant to ascertain what is a *"sale"* for the purpose of
which the oleomargarine was alleged to have been kept.
Nor are we concerned with the Statute of Frauds, nor
the effect of non-delivery upon the rights of third per-
sons. A contract of sale may be fully executed so that
title passes, or it merely may be executory. [Cunning-
ham v. Ashbrook, 20 Mo. 553; Bank v. Smith, 107 Mo.
App. 178.] In general, the acceptance of an order by
the person on whom the order is made is a binding
agreement between the parties, although there is no
completely executed contract of sale. As said in the
case of Cunningham v. Ashbrook, 20 Mo. l. c. 556:

"The term sale, however, in its largest sense, may in-
clude every agreement for the transferring of owner-
ship, whether immediate or to be completed afterwards,
and goods, in reference to the disposition of them by
sale, may be considered as existing separately and ready
for immediate delivery, or as a part of a larger mass
from which they must be separated by counting, weigh-
ing, or measuring, or as goods to be hereafter procured
and supplied to the buyer, or to be manufactured for
his use."

Then we have this situation: Here was a binding
contract entered into between these parties whereby the
owner agreed to sell and deliver certain goods to the
purchaser. The goods were separated from the general
stock for the purpose of such delivery; they were placed
in a wagon and taken to St. Louis in pursuance of that
purpose, and delivered there. By what stretch of con-
struction could it be said that Swift & Company kept
those goods on hand for even an instant of time for the
purpose of sale in St. Louis? Stocker Brothers un-
doubtedly kept oleomargarine for sale and sold it in St.
Louis, but whether there was a proceeding against them
does not appear.

A sale is a contract. It includes an agreement up-
on quality and price, as well as delivery. To say the
goods were kept for the purpose of selling them is to
say they were kept for the purpose of seeking a pur-

chaser; for the purpose of beginning and concluding a bargain, by which title would pass. It is not shown that the driver of the wagon had any discretion in the matter or had any authority whatever to make a contract regarding the property; on the contrary, it appears that he had no discretion except to deliver it in pursuance of a contract previously made. He could not have had the oleomargarine in his custody for the purpose of sale unless he had authority to make a contract of sale. If, at any point on his way from the plant in East St. Louis to the purchaser's store in St. Louis, he had been accosted by one who wanted to buy, he would have been obliged to say he had no such goods "for sale," but what he had on his wagon was sold. Statutes usually are to be construed so as to give effect to the ordinary meaning of words. [State ex rel. v. Gordon, 266 Mo. l. c. 411.] There is no reason why a strained construction should be given the statute with which we have to deal, so as to convict the defendants, because the common understanding of the meaning of the language used seems to accord with the evident purpose of the law.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.