THOMAS TONEY, Appellant, v. JOSEPH GOODLEY, Defendant; HARPER-FRICKE GRAIN COMPANY, Interpleader, Respondent.

Kansas City Court of Appeals, March 26, 1894.

1. **Attachment**: TITLE BETWEEN PLAINTIFF AND INTERPLEADER. An interpleader in an attachment suit must recover on the strength of his own case, without reference to the weakness of the plaintiff's case.

2. **Sales**: TRANSFER OF TITLE BETWEEN PARTIES: POSSESSION. Under the contract between the defendant and the interpleader, together with the other facts in evidence it is *held* that a valid title to certain hay was transferred from the defendant to the interpleader, since a specific article at a specific price was appropriated by the seller to the buyer, notwithstanding there was no transfer of possession.

3. **Fraudulent Conveyances**: POSSESSION: ATTACHMENT. Though possession does not follow the sale of chattels in a reasonable time; nevertheless, if possession be had prior to the creditors' levy, the sale will be good against the creditors.

4. **Landlord and Tenant**: LIEN: ATTACHMENT TO ENFORCE: STATUTE. In the original opinion it is held, under the landlord and tenant act, the attachment therein provided for is not the proper remedy to enforce the landlord's lien therein created; they are separated remedies and the landlord can avail himself of either, as he may elect, and if he proceeds by attachment, he does so merely as an ordinary attaching creditor with no additional rights by reason that his claim is for rent. *On rehearing*, this holding is reversed as in conflict with *Garroutte v. White*, 92 Mo. 240.

5. ———: LIEN: PURCHASER FOR VALUE WITHOUT NOTICE: STATUTE. Where a purchaser of farm products has knowledge of facts sufficient to put him on inquiry as to whether they are grown on rented premises where the rent is unpaid, he is chargeable with notice.

6. **A Vendee** with knowledge that his vendor was not a land owner and that he lived on rented premises, but without notice that the products in controversy were grown upon rented premises, has not sufficient knowledge to put him upon inquiry.

7. **Where**, as in this case, the purchaser has no such knowledge and pays for the products in good faith, he takes them free from the landlord's lien; and this policy seems to be indicated by the late amendment to section 6384, Revised Statutes, 1889.

Toney v. Goodley.

*Appeal from the Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*McCluer & Bowling* and *Thurman & Wray* for appellant.

(1) "The question is, shall the interpleader recover? And such recovery must be by affirmatively showing that he is entitled to the property." *Boller v. Cohen*, 42 Mo. App. 97–99. (2) The contract introduced was executory and not executed; evidenced an agreement to sell and not a sale. If Goodley had refused to carry out the contract, interpleader could not have replevied the goods. Its remedy would have been damages for violation of a contract. The title did not pass to interpleader. Title does not pass so long as there remains anything for the seller to do, such as transporting goods to another place to be there delivered and received. *Nicholson v. Golden*, 27 Mo. App. 132, 153; *Thomas v. Ramsey*, 47 Mo. App. 84–91, 99; *Calcutta Co. v. De Mattos*, 32 L. J. Q. B. 322–355; 1 Smith's Leading Cases [Ed. 1879], p. 164; *Montgomery v. Gann & Mathers*, 51 Mo. App. 187; *Kelly v. Upton*, 5 Duer, 336; *Connory v. Wallace*, 2 Ala. 542; *Boot & Shoe Co. v. Boise*, 46 Mo. App. 594; *Freight & Cotton Press Co. v. Standard*, 44 Mo. 83; *Blackwood v. Cutting Packing Co.*, 76 Cal. 212; *Adams v. O'Connor*, 100 Mass. 515; *Peabody v. Maguire*, 79 Me. 585; *Turner v. Moore*, 58 Vt. 456; *Ober et al. v. Corson*, 62 Mo. 213; *Love v. State*, 78 Ga. 66; *Bowers v. Anderson*, 49 Ga. 148. (3) There was no open, notorious and unequivocal change of possession of the hay in dispute from Goodley to interpleader. R. S. 1889, sec. 5178; *Mills v. Thompson*, 72 Mo. 367;

*Wright v. McCormick,* 67 Mo. 426; *Cloflin v. Rosenberg,* 42 Mo. 439; *Lesem v. Herriford,* 44 Mo. 325; *Bishop v. O'Connell,* 56 Mo. 158; *State ex rel. v. Merritt,* 70 Mo. 283; *Stewart v. Bergstrom,* 79 Mo. 524; *Thomas v. Ramsey,* 47 Mo. App. 84; *Nicholson v. Golden,* 27 Mo. App. 132.

*H. C. Timmonds* for respondent.

(1) Respondent asserts that it had the title to the hay in question as soon as the bargain was consummated and the $2,000 paid on the purchase price; and that it was then entitled to the possession thereof. Its taking actual charge of the hay, three days after the sale, and after Goodley left the country, was not wrongful. It belonged to Harper-Fricke Grain Company; they took it pursuant to, and not in violation of, their purchase. (2) This sale must be considered on common law grounds. At common law, the property in, or title to, a chattel vested in the vendee in either of the five following cases: *First,* if a day certain is set for the delivery of the chattel, and the payment of the money; *second,* if all the purchase price is paid; *third,* if part of the purchase price is paid; *fourth,* if earnest money be paid to the seller; or, *fifth,* if the purchaser take possession by agreement, where no money is paid, earnest given, or day set for the payment. In all these cases there is a good bargain and sale of the chattel to alter the property thereof. *Hamilton v. Clark,* 25 Mo. App. 436, and cases there cited; Benjamin on Sales [4 Ed.], sec. 313; *Cunningham v. Ashbrook,* 20 Mo. 553, 556; 148 Penn. St. 98; *McIntosh v. Smalley,* 32 Mo. App. 125; *Morse v. Sherman,* 106 Mass. 433; Benjamin on Sales, sec. 674; *Williams v. Evans,* 39 Mo. 201; *Erwin v. Arthur,* 61 Mo. 389; 39 Conn. 413; 1 Parson on Contracts [5 Ed.],

519; 1 Bishop on Contracts, sec. 1306, and citations in foot note; Hilliard on Sales, sec. 6; *Petring v. Chrisler*, 90 Mo. 649; *Dobyns v. Meyer*, 95 Mo. 132; *Greely v. Reading*, 74 Mo. 309; *Ober v. Carson*, 62 Mo. 213. (3) Under the statute (R. S., sec. 5178), relating to sale and delivery of personal property, actual possession taken and retained by the vendee completes his title against all persons, except those whose rights intervene between the sale and the taking of possession. *McIntosh v. Smiley*, 107 Mo. 377. (4) But a landlord does not, by virtue of his statutory lien, have either a right of possession or right of property. He can not maintain replevin, trover or trespass. *Fink v. Pratt*, 22 N. E. Rep. (Ill.) 819; *Finney v. Harding*, 27 N. E. Rep. (Ill.) 289. (5) Nor is a *bona fide* purchaser of crops liable to the landlord in an action for the value thereof, unless he had knowledge that the crops were grown on demised premises. R. S., sec. 6384; *Finney v. Harding, supra; Lomax v. Legrand*, 60 Ala. 537; *Bledsoe v. Mitchell*, 12 S. W. Rep. (Ark.) 390; *Thornton v. Carver*, 6 S. E. Rep. (Ga.) 915. The lien of the landlord does not follow the crops into the hands of a *bona fide* purchaser without notice. *Haifley v. Haynes*, 37 Mich. 535; *Smith v. Lumber Co.*, 31 N. W. Rep. (Wis.) 694; *Beall v. White*, 94 U. S. 382; *Fowler v. Rapley*, 15 Wall. 328; *Frazer v. Jackson*, 46 Ga. 621; *Thornton v. Carver*, 6 S. E. Rep. (Ga.) 915; *Westmoreland v. Wooten*, 51 Miss. 825; *Nesbitt v. Bartlett*, 14 Iowa, 485; *Howe v. Clark*, 23 Ill. App. 145; *Lomax v. Legrand*, 60 Ala. 537.

ELLISON, J.—This is an attachment suit by a landlord against his tenant, brought under the statute concerning landlord and tenant, for the purpose of enforcing the landlord's lien for rent. The action was instituted within the eight months limited for the

duration of a landlord's lien.

Interpleader filed his interplea, claiming the property, a large lot of hay, as his own, under a purchase from the defendant, the tenant. The interpleader prevailed in the trial court, and plaintiff has appealed.

The first question to dispose of is, whether interpleader was the owner of the property at the time of the levy of plaintiff's attachment writ. For interpleader to recover, it must do so on the strength of its own case, without reference to the weakness of the plaintiff's case. *Boller v. Cohen*, 42 Mo. App. 97. The facts, briefly stated, are that defendant rented lands of this plaintiff, as well as of other parties, and that he likewise was engaged in the business of buying and selling hay. He was, at the time of the transaction with interpleader, the owner of a lot of baled hay, a part of which was produced on the lands he rented of plaintiff, and a part of which was produced upon lands rented of other parties. Whether any part of it was what he purchased from outside parties does not appear. Interpleader entered into the following writing with defendant:

"Mr. Joseph Goodley, of Kenoma, Barton county, Missouri, agrees to sell and deliver to Harper-Fricke Grain Co., of Iantha, Barton county, Missouri, six hundred tons of number 1 prairie hay, now in barns at Kenoma, Barton county, Missouri. Said hay to be weighed and put in cars at Kenoma, Barton county, Missouri, on or before the following date: From the south barn by February 1, 1892, on or before. From the red barn (McKnight's land), March 1, 1892, on or before. From the north barn or Major's barn, by June 1, 1892. The said Harper-Fricke Grain Co. to pay for said hay at the rate of $5 per ton. And said Harper-Fricke Grain Co. have this third day of December, 1891, paid to said

Mr. Joseph Goodley the sum of two thousand dollars ($2,000) cash on said hay, the balance to be paid when delivered on cars at Kenoma, Barton county, Missouri. Mr. Joseph Goodley has $1,700 insurance on said hay. Said policy expires on April 1, 1892. Said policy to be transferred to the Harper-Fricke Grain Co. The said Harper-Fricke Grain Co. to furnish a man to help car hay. Said amount of hay stated above may be two or three cars more or less than the amount above stated.

"Jos. Goodley.

"Harper-Fricke Grain Co.

"Springfield, Greene County, Missouri, Dec. 3, 1891."

Upon payment to defendant of the $2,000 mentioned in this writing he left the country. The barns in which the hay was, as mentioned in the writing, were in or near the village of Kenoma, the nearest being about two hundred yards, and the furthest about eight hundred yards, from the place where it was to be loaded on the cars. The evidence disclosed, without dispute, that the hay was inspected by the interpleader and defendant and that it was all supposed to be of the quality called for by the writing. It further appeared that the interpleader was taking all the hay in the three barns, it being supposed that there was not more than six hundred tons of it. It turned out, in point of fact that there was over five hundred tons, and that, with the exception of a quite trivial amount, it was of the quality supposed by the parties. Under these circumstances the trial court properly instructed the jury that there was a transfer of title to the hay from defendant to interpleader.

The contract in regard to the sale being reduced to writing took the transaction out of the statute of frauds, and thus left it only necessary that there should be a valid transfer of the title at common law. There

was here a sale of a specific and ascertained lot of hay at a fixed price. The ascertained or specific article was appropriated by the seller to the buyer, and, indeed, the larger part of the purchase price paid. It is not a case of an unascertained lot as a part of a general whole. This, undoubtedly, was sufficient to transfer the title to the property to the interpleader. *Hamilton v. Clark*, 25 Mo. App. 436, and cases cited. The circumstance that defendant was to weigh and deliver the hay on board the cars, with the help of interpleader, does not affect the operative force of the sale as to the transfer of the title. For delivery, as between the parties, it is not essential, since the contract was in writing; and the price was fixed, the weighing being merely for the purpose of getting the total amount thereof. When the terms of the price ''are so fixed that the sum to be paid can be ascertained without further reference to the parties themselves,'' it is sufficient. *Cunningham v. Ashbrook*, 20 Mo. 559. So then, as between interpleader and defendant, the title and ownership of the latter vested in the former.

II. It became necessary to determine the foregoing question in order that another branch of the case may be properly decided. Plaintiff is a creditor of defendant, and as to plaintiff, more is requisite to a valid sale than as to interpleader. As to plaintiff, there must have been an open, actual and continuous change of possession before the levy of his writ of attachment. Having already determined that interpleader was the owner of the property, he necessarily had the right, if he so elected, to take possession by paying the price as it was ascertained, if any yet remained to be paid above the cash payment. The circumstance that the hay was to be put onto the cars by defendant was for interpleader's benefit, and did not prevent him from

waiving the performance of that duty by defendant. The court submitted to the jury the question whether interpleader did take actual, visible and exclusive possession prior to the levy of plaintiff's writ. The jury could not well have found that such possession was not taken. Interpleader sent two men to the barns. They bought locks and put on two of them. The third, not having a door, they nailed up the opening. The locks were purchased in the village for the avowed purpose of locking the barns and taking possession, and it was fully known that they had taken possession. But more than this, interpleader had loaded some of the hay on cars before the levy. It has now become well recognized law, in this state since the case of *McIntosh v. Smiley*, 32 Mo. App. 125; s. c., 107 Mo. 377, that, though possession does not follow the sale of chattels in a reasonable time, nevertheless, if possession be had prior to the creditor's levy, it will make a good sale as against the creditor.

From the foregoing it is apparent that interpleader was the owner of the property and had title thereto, not only against defendant, but against this plaintiff as a creditor.

III. The remaining question is, has the interpleader the title thereto as against plaintiff as a landlord, or, in other words, has he the title to the property free from the landlord's lien in so far as the present proceeding is concerned. In discussing this matter we will concede (merely as a concession) that the testimony shows enough knowledge on part of interpleader, under our decision in *Dawson v. Coffey*, 48 Mo. App. 109, to have put him on inquiry and thereby have charged him with knowledge that a part of the hay purchased was the product of plaintiff's farm of which defendant was the tenant. The question then, will depend upon whether the suit which plaintiff has instituted is a suit

for the enforcement of his landlord's lien, or, merely a suit for the collection of a debt as a creditor with a right of attachment. In our opinion the remedy by attachment provided in the landlord and tenant statute can not be used for the enforcement of a landlord's lien, as such. The statute, section 6384, Revised Statutes, 1889, provides for an attachment for rent in any of the six instances following: When the tenant intends to remove, or has removed, his "property from the leased premises," or has within thirty days so removed it; or, when he shall dispose of, or attempt to dispose of, any part of the crop grown upon the leased premises so as to endanger, hinder or delay the collection of the rent; or when the rent is due and unpaid after demand for the same. This statute furthermore provides, that the attachment writ shall be issued against the tenant's "personal property, including the crops grown on the leased premises." It will be readily observed that there is no necessary connection between the attachment and the landlord's lien, since the attachment may be issued on account of the action of the tenant regarding property upon which there is no lien and for causes wholly independent of the lien; and that the lien may exist and be enforced when there is no cause of attachment. It is true that two of the six causes relate to property on which the landlord has a lien and that the attachment writ may be levied upon property upon which he has such lien. This portion of the statute has not changed the law from what it was before this part was inserted by amendment. It is but putting into the form of a statutory enactment the interpretation which the courts gave the statute before their insertion, it being always understood that the word "property" embraced crops. Thus, it appears that in *Morris v. Hammerle*, 40 Mo. 489, the cause of attachment was removal of "property."

The "property" was the product of the farm and it was held that it must be the removal of an amount so as to put the landlord in danger of losing his rent. And so in *Gilliam v. Ball*, 49 Mo. 249, the cause of attachment was removal of property. The property consisted of a portion of the crop. So it was decided in *Hubbard v. Moss*, 65 Mo. 651, that the word "property" which the writ was to be levied upon included the crops; and the citation by the court in that case of the section concerning exemptions of the tenant seems to put the conclusion beyond question.

The statute then, in the respect now considered, is not different from what it was as found in Wagner's statutes, or the revision of 1865. The interpretation of the latter statute was that an attachment was not a remedy for the enforcement of the lien. In *Price v. Roetzell*, 56 Mo. 500, it was held, NAPTON, J., speaking for the court, that it was obvious "an attachment, such as the section authorizes, is not to enforce a lien against the crops raised during the year, but to secure the rent from property on the place on which there is no lien." And in *Hubbard v. Moss*, 65 Mo. 647, the supreme court says: "We do not think that the attachment was a remedy provided for enforcing the lien, for the lien may be in full force and the landlord have no right to an attachment at all." That case then proceeds to hold, in effect, that the crops are attachable property at the suit of the landlord, notwithstanding he is not enforcing his lien as such.

But it may be suggested that the section of the statute which provides for the landlord's lien, as such, likewise provides for its enforcement by attachment. That section has been amended since the decisions last referred to and, as we have seen that attachment was not the remedy before the amendment, it is necessary to ascertain if that amendment has made any change

in respect to the matter under discussion.    The section as amended is as follows: "Sec. 6376.    Every landlord shall have a lien upon the crops grown on the demised premises in any year, for the rent that shall accrue for such year, and such lien shall continue for eight months after such rent shall become due and payable, and no longer.    When the demised premises or any portion thereof are used for the purpose of growing nursery stock, a lien shall exist and continue on such stock until the same shall have been removed from the premises and sold, and such lien may be enforced by attachment in the manner hereinafter provided." Does the clause regarding attachment refer to the lien on both crops and nursery stock?    The section, it will be observed, is divided into two independent sentences. The first sentence was the complete section before amendment.    The last sentence is the amendment. The first sentence has reference to the yearly production of the soil and could not have been held to cover nursery stock.    The second sentence provides, independently, for a "lien" on a nursery stock.    The nursery lien can not be laid upon the crop, nor can the crop lien be laid upon the nursery stock.    The nursery lien exists and continues until the stock is removed and sold. The crop lien only exists for the rent for the year of its production and continues but eight months without regard to removal and sale.    It is thus manifest that the two liens are wholly distinct and are independent of each other, and that a reference to one can not include the other.    When, therefore, it is provided by the last clause in the last sentence that "such lien may be enforced by attachment," the lien meant is the nursery lien which has just been brought into existence, by name, in the words immediately preceding.

There are expressions, made in the course of the opinions in *Chamberlain v. Heard*, 22 Mo. App. 416,

and in *Hulett v. Stockwell*, 27 Mo. App. 328, which would, perhaps, indicate a different view. But the point here discussed was not in judgment in either of those cases and was not discussed in the opinions.

The result of our conclusion on this subject is that the lien and the attachment are things apart; that the landlord has two remedies by which he may proceed to the collection of his rent: One is by enforcement of his lien; see *Price v. Roetzell, supra;* and the other is by attachment as provided in the aforesaid section 6384, Revised Statutes, 1889. If he elects to proceed by attachment, he does so as an ordinary attaching creditor with no additional rights, in such action at least, by reason of the fact that his claim is for rent.

From this conclusion it follows that whatever was hypothetically put to the jury in the instructions of the court as to plaintiff's right to a lien were more than he was entitled to and that he has no ground of complaint at the refusal of others offered.

No other objections are offered which we, deem necessary to discuss and we therefore affirm the judgment. All concur.

## ON REHEARING.

ELLISON, J.—We granted a rehearing in this case principally for the reason that we found that that portion of the foregoing opinion which ruled that attachment was not the proper remedy for the enforcement of a landlord's lien was in conflict with a case in the supreme court, *Garroutte v. White*, 92 Mo. 240.

The whole case has, however, been again well argued and we have again given it our consideration. The sale and the circumstances of the sale we find on examination to be as originally stated. The contract

does not show a contract of sale of a part of a quantity of hay to be afterwards separated from the mass. It shows a sale of a specific and identified lot of hay viz., six hundred tons in certain barns. The six hundred tons was what the parties supposed was in the barns. It was not intended to express that six hundred tons of unspecified hay out of a large mass was contracted for, but the intention was to describe the hay then sold, it being all there was in the barns. The mere fact that provision was made as to the possibility of there being from one to three car loads, more or less than the amount supposed to be in the barns, can not affect the character of the transaction. We are confirmed in our opinion that it was a sale *as between the parties* by an able, interesting and elaborate opinion by Ch. J. PAX-SON in the recent case of *Commonwealth v. Hess,* 148 Pa. St. 98, where on a review of a great number of cases, the distinction asserted in *Hamilton v. Clark,* 25 Mo. App. 456, is clearly and satisfactorily stated.

On the question as to whether interpleader took actual and visible possession of the hay before the levy of the attachment, there can be nothing further said than that the jury passed upon it under proper instructions, and that there was ample evidence to sustain their finding.

We will now proceed to dispose of the case in recognition of the decision of the supreme court above referred to, that attachment is the proper remedy. There was evidence tending to show that a small portion of the hay was grown upon plaintiff's lands by the defendant as his tenant and the court gave instructions to the jury whereby it was intended to assert that if any of the hay was grown upon plaintiff's land it was subject to the lien and should be deducted from the whole amount sold to interpleader. This instruction is criticised by plaintiff. It is furthermore asserted that the

evidence established beyond any question that twenty tons of the hay was grown upon plaintiff's premises and that it should be subjected to his lien. But the question arises, can a landlord enforce his lien on the crop as against a *bona fide* purchaser for value without notice? If he can not, we need not go into the complaint made by the plaintiff. We regard interpleader as a purchaser for value, without notice. The evidence shows clearly that he in point of fact had no notice of any kind. But if he had knowledge of facts sufficient to put him upon inquiry he would be chargeable with notice. This we decided in *Dawson v. Coffey*, 48 Mo. App. 109, a case arising prior to the amendment to the statutes which we shall presently notice. The evidence in this case is that defendant was known to interpleader to live on rented premises. Not any particular premises but merely that he was not a land owner and lived on rented property. He was, however, shown to be *a dealer in farm products*; that he bought and sold such articles on the market. Interpleader had dealt largely with him in this capacity for several years. Interpleader had no knowledge that any of the hay in controversy was grown on rented property, or that the defendant was plaintiff's tenant. In our opinion, this was not sufficient to put interpleader upon inquiry as to whether any of this hay was grown upon plaintiff's lands.

The amendment to the statutes, section 6384, reads as follows: "* * * *Provided*, if any person shall buy any crop grown on demised premises upon which any rent is unpaid, and such purchaser has knowledge of the fact that such crop was grown on demised premises, he shall be liable in an action for the value thereof, to any party entitled thereto, or may be subject to garnishment at law in any suit against the tenant for the recovery of the rent." This amendment has reference to the

recovery of the value for the conversion of the crop, and it amounts to a legislative declaration that if the purchaser has no such knowledge he is not liable for the value. While it is not strictly applicable to the question whether a lien may be enforced against the crop in the hands of an innocent purchaser for value, it is nevertheless indicative of a policy which bears upon this question and which is strongly persuasive that there should be no embarrassment upon the *bona fide* sale, purchase and interchange of agricultural products which now enter so largely into commercial transactions. It may be stated generally that it is against the policy of the law to hamper personal property, which so readily passes from hand to hand, with liens not of a public nature. There is no provision made in the statute for public notice of a landlord's lien, and it is fair to assume that, in the absence of general notice, it was intended that there should be knowledge binding upon the purchaser.

The landlord's lien does not depend upon contract, it is a charge fixed by statute and it ought not to be assumed that it was intended to permit such charge to place an embargo upon the transfer of so large a portion of the personal property of the country. The law favors an innocent purchaser, and without some affirmative legislation showing an intention to take from him that protection with which he is favored in other matters of a commercial nature, both by our statutes and the common law, the lien of the landlord should not be made an exception. There is no necessity under existing law, for allowing an exception. The landlord is amply protected. He has had ample remedies provided for him. If the tenant is about to remove the crop from the premises, or has removed it, the landlord may attach it. He is doubtless given these rights partly on the idea that by a removal and sale to *bona*

*fide* purchasers his lien would be lost. In this day of easy and quick transit of freight, when a tenant may be his own shipper to the market centers of this state, it would be a matter of vast inconvenience to allow the distant landlord at any time within a period of eight months to follow the property into the hands of innocent purchasers. It would put an embarrassment upon trade which ought not to be allowed, unless plainly expressed. The question, unaffected by a similar statute to the amendment we have above set out, has met with different conclusions. But we believe that, on principle, the views we have expressed are sound. They are supported by 1 Jones on Liens, secs. 577, 578. Also by *Scarfe v. Stovall*, 67 Ala. 237. The principle is also ably maintained in *Smith v. Shell Lake*, 68 Wis. 89; as well as in *Thornton v. Carver*, 80 Ga. 397, where it is said: "Landlords generally are on or near the rented premises and have better opportunities to look after their rights and interests than purchasers would ordinarily have if the latter were charged with notice of secret liens upon the property purchased. Cotton is almost like bank bills, promissory notes or bonds, passing by delivery, in the due course of trade, through different hands. Under the custom prevailing in this state, the purchaser in most cases does not see the owner of the cotton. It is shipped from a distance over the railroads from the owner to the warehouseman, and the purchaser deals exclusively with the latter. Generally it would be impracticable, or almost impossible, for the purchaser to ascertain whether the cotton was grown upon rented premises, or whether it is subject to liens of this character or not."

We have refrained from commenting upon a number of cases where the decision for or against the proposition we here maintain has been influenced by provisions of statutes not found here. After a careful

scrutiny of all the points made by counsel against the judgment we have concluded .that they can not be allowed to overturn the result arrived at below. The judgment will, therefore, with the concurrence of the other judges, be affirmed.