BENEDICT & BURNHAM MANUFACTURING COMPANY, Respondent, v. JAMES C. JONES, Assignee of T. C. WHITE & COMPANY, Appellant.

St. Louis Court of Appeals, December 24, 1895.

1.  Sales: COMMON LAW ELEMENTS: DELIVERY: SEPARATION OF ARTICLE SOLD. The essential elements of a sale at common law are, a proper subject, an agreed price, and the consent of the parties. Delivery is not essential to the validity of the sale as between the parties thereto; nor, when the subject of the sale is a part of a mass of articles, is separation necessary, if it is readily distinguishable and capable of identification.

2. ———: ACCEPTANCE OF OFFER AND COMPLETION OF SALE. After goods
sold had been delivered to the vendee, but prior to payment therefor,
he offered to rescind the sale and return the goods. This offer the
vendor accepted unconditionally by telegram, but he, on the same
day, by letter, requested the vendee to reship the goods and ex-
pressed the opinion that the latter ought to pay the freight. *Held*,
that this request did not render the sale incomplete prior to reship-
ment in compliance therewith, and that the suggestion as to the pay-
ment of freight did not render conditional or qualify the acceptance
of the offer.

*Appeal from the St. Louis City Circuit Court.*—HON.
P. R. FLITCRAFT, Judge.

AFFIRMED.

*Louis A. Steber* and *Frank X. McCabe* for appel-
lant.

The correspondence between defendant's assignor
and the plaintiff related only to a promise to pay in
goods, which is but an executory contract; whereas
payment itself is where the thing is executed by a
delivery,—a thing done. *Rhodes v. Chesson*, Busb. L.
(N. C.) 336; *Southwestern, etc., Co. v. Stanard*, 44 Mo.
83; see note in 18 Am. and Eng. Encyclopedia of
Law, bot. p. 151. A payment was not effected until
the goods were actually delivered into the hands of the
party for whom they were intended, or his authorized
agent. *Kendall v. Bain,* 46 Mo. App. 592; *Gatzweiler
v. Morgner*, 51 Mo. 47; *Hatch v. Bayley*, 12 Cush. 28,
29. Where anything remains to be done between the
seller and the purchaser, before the goods are to be
delivered, as separating the specific quantity sold from
a large mass, or identifying them when they are mixed
with others, a present right of property does not attach
in the purchaser. *Ober v. Carson*, 62 Mo. 213;

*Bass v. Walsh*, 39 Mo. 198; *Kendall v. Bain*, 46 Mo. App. 595.

*W. B. Homer* for respondent.

The question of transfer to, and vesting title in, the purchaser always involves an inquiry into the intention of the contracting parties, and it is to be ascertained whether their negotiations or acts show an intention on the part of the seller to relinquish all further claim as owner, and on the part of the buyer to assume such control; and delivery is not necessary to pass the title as between the parties. *Ober v. Carson*, 62 Mo. 209, 214; *Hamilton v. Clark*, 25 Mo. App. 428, 437; *Kuhler v. Tobin*, 61 Mo. App. 576; *Toney v. Goodley*, 57 Mo. App. 235, 240; *Cunningham v. Ashbrook*, 20 Mo. 553; *Williams v. Evans*, 39 Mo. 201, 204; *Woodburn v. Cogdal*, 39 Mo. 224, 228; *Nance v. Metcalf*, 19 Mo. App. 183, 188; *State to use v. Bell,* 2 Mo. App. 102; *Drew v. Drum*, 44 Mo. App. 25, 29; *Kendall v. Bain*, 46 Mo. App. 581, 594; *Commonwealth v. Hess*, 148 Pa. St. 98. It appearing that the defendant's assignor had not paid for the goods, and that he tendered the same back to plaintiff for the reason that he was unable to pay for them as he had agreed, and the plaintiff accepted them as tendered, the contract of sale was rescinded by mutual consent. *Roberts v. Boulton*, 56 Mo. App. 405, 407; *Kloes v. Wurmser*, 34 Mo. App. 453; *Bidault v. Wales*, 20 Mo. 546; *Blackwell v. Fry*, 49 Mo. App. 638, 641.

BIGGS, J.—Prior to August 2, 1893, T. C. White was doing business in the city of St. Louis under the name of T. C. White & Co. He purchased a lot of wire from the plaintiff, and, in answer to its letter requesting payment, he mailed the following:

"ST. LOUIS, MO., July 25, 1893.

"*Benedict & Burnham Manufacturing Co., New York City:*

"GENTLEMEN:—We have your valued favor of the 18th inst., which was received during the writer's absence from home. We appreciate your kindness fully, and only wish we could reciprocate by sending you a remittance in full for your account. The writer has just returned from a trip west, where he went to collect several thousand dollars, but came back without a cent, and it may be several months before we can get any of this money, and we are unable to get any assistance from our bank at this time, and, in view of all these circumstances, would suggest that you allow us to return to you the wire we have, a very little of which we have sold, or place the matter in the shape of a consignment account, as it may be some time before we will be able to close the matter with you. If you have any suggestions to make that would place the matter in better shape, kindly do so, and we will act at once. While we do not anticipate any trouble, we do not know what might happen. An early reply will much oblige, Yours respectfully,

"T. C. WHITE & CO."

On receipt of this letter the plaintiff telegraphed the following:

"JULY 28, 1893.

"*T. C. White & Co., St. Louis, Mo.*

"Yours 25 received. Please return to us all of our wire which you have on hand unsold.

"BENEDICT & BURNHAM MFG. CO."

On the same day the plaintiff mailed the following letter to White:

"New York, July 28, 1893.
"*Messrs. T. C. White & Co., St. Louis, Mo.*

"Gentlemen:—We have your favor of the 25th, received in the absence of the writer; hence have replied by telegram to-day, advising that you return to us such of our stock as you at present have on hand.     Under the existing circumstances, we think this proposition the best thing for both you and ourselves.     We certainly do not want to insist on your attempting to pay for goods that you are not in a position to take care of, and, inasmuch as our wire department is at present shut down, we can use the material to advantage here. Will you kindly attend to making the shipment immediately, and send it by the cheapest route; and we think that, under the circumstances, it would be no more than fair that you should prepay the freight and send us New York draft for any difference which exists between the amount of stock that you return and our statement.

"We await your favor.

"Yours truly,
"Benedict & Burnham Mfg. Co.
"W. A. Hungerford, Agent."

The telegram and letter were duly received by White, but he neglected to ship the goods as requested, and, on the second day of August following, he made a general assignment for the benefit of his creditors to the defendant, J. C. Jones.     Jones took possession of all the goods found in White's storeroom, including the wire purchased from plaintiff.     The latter made claim to the wire relying upon the alleged contract of resale, and, upon refusal of the defendant to give it up, the present action in replevin was instituted and the property taken from the defendant under the writ. The jury found the issues for the plaintiff, assessing the damages at a nominal sum.     The defendant has

appealed, and complains of the action of the court as
to the instructions.

All the evidence is to the effect that at the time of
the alleged resale the bulk, if not all, of the wire pur-
chased from plaintiff was in the original packages, to
which were still attached the cards or tags of plaintiff,
and that there was no difficulty in distinguishing that
wire from other like stock then in the store.   Whether
the wire was set apart or separated from the other
goods, the evidence was conflicting.   Under this state
of the proof the circuit court submitted the case to the
jury under the following instruction asked by the
plaintiff, to wit:

"The court instructs the jury, as a matter of law,
that the effect of the letter of T. C. White & Company
under date of July 25, and the telegram of the plaintiff
under the date of July 28, was to invest the title of the
property referred to in said letter and telegram in the
plaintiff; and, if the jury find that the goods delivered
to the plaintiff under the orders of delivery in this case
are the goods referred to in said letter and telegram,
they will find their verdict for the plaintiff, and assess
its damages at one cent."

This instruction assumes that there was a valid
and complete resale of the goods, and it only left the
jury to find that the wire seized under the writ of
replevin was the wire originally sold by plaintiff to
defendant.   That the correspondence shows a com-
pleted sale at common law can not be questioned, unless
the wire sold was a part of a larger mass and its sepa-
ration therefrom was necessary to its identification.
The essentials of a valid and complete sale at common
law are a proper subject, an agreed price, and the con-
sent of the contracting parties.   An actual delivery, as
between the parties, is not necessary.   If the property
is so situated that the purchaser can rightfully take

possession of it, the sale is completed. *Williams v. Gray*, 39 Mo. 201; *Southwestern, etc., Co. v. Stanard*, 44 Mo. 71; *Kendall Boot and Shoe Co. v. Bain*, 46 Mo. App. 581; *Toney v. Goodley*, 57 Mo. App. 235. The exception to this rule is that, where the subject of a sale is a part of a larger mass from which it must be separated by counting or weighing, then the sale is not complete until this is done. It is urged by counsel for defendant that a separation *was* necessary in this case, and that, as the evidence was conflicting on this point, the question should have been left to the jury. The trouble with this argument is that the premise is wrong. Whether the wire was actually separated or set apart by White is a matter of dispute, but all of the evidence is to the effect that, while the bundles of wire were mixed with other goods, they bore plaintiff's tags and could be thus readily distinguished from other wire in the establishment. The following extract is from the testimony of White, who was introduced as a witness by the defendant:

"*Q*. Were these goods together with the cards on them? *A*. Yes, sir.

"*Q*. Showing where they came from? *A*. Yes, sir.

"*Q*. Showing them to be the goods of the plaintiff? *A*. Yes, sir.

"*Q*. The goods shipped from the plaintiff? *A*. Yes, sir.

"*Q*. They were not mingled with other goods so that they could not be separated? *A*. No, sir."

Thus it appears that the wire sold was ascertained and consisted of specific articles easy of identification. which by no means presented a case of "an unascertained lot as a part of a general whole." *Toney v. Goodley, supra*.

The objection that the correspondence shows an incomplete sale, in that White was to attend to the

shipping of the goods, is without merit. This consti-
tuted no part of the consideration of the sale, but was
merely a request by plaintiff that White should act as
its agent in the matter. This is the fair and reasonable
construction of the letter. The further objection, that
plaintiff's letter shows a conditional acceptance, is like-
wise untenable. It was only suggested by the plaintiff·
that, under the circumstances of the case, White ought
to pay the cost of the reshipment. It was not stated as
one of the conditions of the sale, or as a modification
of plaintiff's unconditional acceptance as evidenced by
his telegram.

The instructions asked by the defendant need not
be set forth as they embody his theory of the case above
indicated, and were, therefore, properly refused.
Finding no error in the record, the judgment of the
circuit court will be affirmed. All the judges concur.