JAMES HARRIGAN, Respondent, v. JOHN S. WELCH, Appellant.

Kansas City Court of Appeals, April 25, 1892.

1. **Delivery**: EVIDENCE: DEMURRER. The evidence in this case as to the delivery of a certain heating apparatus is reviewed, and it is *held* it justified the submission of the case to the jury.

2. ———: INSTRUCTIONS. Instructions on the question of delivery, set out in the opinion, are *held* sufficient when taken in their entirety to submit the issues to the jury, and though subject to verbal criticism are not misleading or prejudicial.

3. **Principal and Agent**: AGENT SUING IN HIS OWN NAME: COMMON LAW: STATUTE. Where a contract is in terms made with the agent personally, he may sue on it, although the fact of the agency and the name of the principal are known, and this rule holds under the statute as well as at common law.

*Appeal from the Buchanan Circuit Court.*—HON. HENRY M. RAMEY, Judge.

AFFIRMED.

*Brown & Craig*, for appellant.

(1) The fact, that the instruction complained of directed the jury that they might find for the plaintiff on a state of facts admitted not to exist, is a fatal objection. *Bender v. Dungan*, 99 Mo. 126; *Harty v. Railroad*, 95 Mo. 368; *Bank v. Overall*, 90 Mo. 410; s. c., 16 Mo. App. 510; *Babb v. Granite Co.*, 41 Mo. App. 642; *Norton v. Railroad*, 40 Mo. App. 642. And the action of the court in giving them another instruction, telling them, in effect, that the first was meaningless, can only serve to aggravate the error. *Nasse v. Algermissen*, 25 Mo. App. 186; *Stone v. Hunt*, 94 Mo. 475; *Frederick v. Allgaier*, 88 Mo. 598. The fact is that the instruction complained of, which is entirely unsupported

by evidence, is the only one asked by plaintiff, which is founded upon the cause of action stated in the petition. (2) The jury were instructed that plaintiff could recover if the defendant had "treated the heater and radiator as having been delivered." This was evidently submitting to the jury a question of law. Whether he had so treated the property was a conclusion of law to be drawn from all the facts. (3) It is true that an agent having authority to contract for the payment of a sum of money to his principal, and to receive payment thereof, may, if he takes the obligation to himself, sue on it in his own name. He is simply, by the terms of the contract, a trustee for his principal. But if the agency is disclosed, and appears in any way on the contract, the rule is different. Thus, when an attorney gave a receipt by which he acknowledged that he had received of A. B. an agreement between C. and D. "assigned to S. S., to collect the money therein contained," it was held that A. B. being the mere agent of S. S. could not sue the attorney for the moneys collected. Story on Agency, sec. 395. And even in those cases where the contract is in the name of the agent, who could otherwise sue on it, the principal may control it by making other arrangements if he desires. Sec. 403.

*Hall & Pike*, for respondent.

(1) The rule announced in the instruction is correct. It is so at common law. The general rule is, that where a contract is in terms made with the agent personally he may be sued on it. And this rule applies although the fact of the agency and the name of the principal are known. Mechem on Agency, sec. 755; Story on Agency, sec. 393, *et seq.; Snider v. Express Co.*, 77 Mo. 523; *Keown v. Vogel*, 25 Mo. App. 35.

But independently of the common law the plaintiff could maintain this action. (2) There was a single issue of fact to submit to the jury, and that was whether the defendant ordered the plaintiff to put the boiler in place and distribute the radiators through the house. This issue was submitted to the jury in various instructions, but the jury were clearly told in all of them that, unless they found said issue of fact in favor of plaintiff, they must return a verdict in favor of defendant. It may not, however, be out of place to refer the court to some of the authorities establishing the liability of the defendant for the installment then due, notwithstanding the destruction of the house. They are as follows: *Richardson v. Shaw*, 1 Mo. App. 234; *Haynes v. Baptist Church*, 12 Mo. App. 536; s. c., 88 Mo. 282; *Cleary v. Solmer*, 120 Mass. 210; *Hall v. School Dist.*, 24 Mo. App. 213; 1 Wharton on Contracts, sec. 326; Bishop on Contracts, sec. 588; *Butterfield v. Byram*, 27 N. E. Rep. 667.

SMITH, P. J.—This was a suit on the following contract to recover the $400 installment therein mentioned.
          " St. JOSEPH, Mo., November 26, 1889.
"*J. S. Welch, Esq.*

"DEAR SIR:—We propose to furnish and erect in your new residence a hot-water heating plant for the sum of $875, to consist of the following: One number 7 Bolton hot water boiler, and eight hundred and forty-seven square feet of Bundy Elite radiation in seventeen radiators, the radiators to be bronzed and painted to suit, the work to be done in the best manner, and all material to be of the best quality, the hauling of all material used in connection to be done at your expense. Payments are to be made as follows: $100, when the supply and return pipes are in place; $400, when the boiler and radiators are delivered on the premises; $300,

when the work is completed; $75, thirty days after completion of the job, or after it has been thoroughly tested and found to be according to the contract. The heater and radiators are not to be delivered or put in place until ordered by you.

"JOHN S. WELCH,<br>
"JAMES HARRIGAN."

The plaintiff was a plumber, and the defendant was engaged in the building of a residence for which he contracted with the former for a heater and radiator manufactured at Detroit, Michigan. The heater and radiators were in defendant's house when it was burned, but whether they had been previously delivered to him there, or were only stored by plaintiff there until the defendant should require them to be put in place in the house is the main matter of dispute in this case. The plaintiff had judgment, and the defendant appealed.

I. The appealing defendant contends that the trial court erred in its action in refusing to sustain his demurrer to the evidence. We do not think this contention should be sustained. There was evidence introduced tending to show that the plaintiff had entered into an agreement (the full extent of which is not disclosed by the evidence) with the manufacturers of the heater and radiators mentioned in the contract sued on, by which they were to fill any contract made by plaintiff for the sale thereof in the city of St. Joseph and to bill the same to plaintiff. The special agent of the manufacturers arranged with the defendant in the first instance for the sale of the heater and radiators, but it seems to have been understood all around that the plaintiff was to be regarded as the seller, and that the contract therefor was to be with him. There was evidence, though not undisputed, that the original agreement for the sale of the apparatus was a verbal one. It further appears that under the original agreement

that the heater and radiators were not to be delivered until ordered by the defendant, but owing to some misunderstanding the special agent of the manufacturers sent them to plaintiff before the defendant had ordered them. On their receipt by plaintiff he notified the defendant of the fact, who consented that plaintiff might store the same in his house then in process of construction, until he should order them put in place.

It further appears that the defendant wrote to the manufacturers complaining that the shipment had been prematurely made, and that their response was that they would make it satisfactory to him. The defendant then wrote up the contract as of the date when he first agreed to purchase and presented it to plaintiff who sent it to the manufacturers who, it seems, signified their approval of it. It was then signed by plaintiff and defendant, and is perfectly consistent with the correspondence between all the parties. There is evidence tending to show that the defendant drew the contract for the purpose of merging into it all previous and existing agreements in respect to the sale and delivery of the heater and radiators, and this end he seems effectually to have accomplished. There was evidence, to say the least of it, that this was the contract, and the only contract, subsisting between plaintiff and defendant at the time defendant's house was burned.

The more doubtful question is whether the evidence of performance of the contract was sufficient to carry the case to the jury, or whether the heater and radiators were ordered by defendant to be put in place before their destruction by the fire that consumed the defendant's house. It is conceded they had been stored in defendant's house as the property of plaintiff. The title would not, of course, pass until there was a delivery under the contract.

There was evidence, though it was by no means clear and cogent, that while the heater and radiators were stored in defendant's house, that the contractor who had, under his contract, possession of it requested the defendant to have the heater and radiator removed, who thereupon directed the plaintiff to remove and place them in their permanent position in the building. There is also some testimony tending to show that the contractor furnished plaintiff hoisting tackle to accomplish the removal, and also gave some directions in respect to the same, from which it may be inferred that he waived his exclusive right to the possession of the house in so far as to permit the placing of the heater and radiators therein. There was testimony that "the heater was set up in its permanent position where it was to go. It was placed on a permanent brick foundation." "The heater was set plumb with the building, and made ready to receive the pipe. The radiators were taken to their various rooms where they were to be used." There is evidence that all this was done under the order of the defendant.

It is true there was countervailing evidence, still we cannot say there was no such evidence adduced as justified the submission by the court of the issue of fact to the jury.

II. The decisive issue of fact in the case arising on the pleadings was very fairly submitted to the jury under the instructions. The court told the jury in the plainest terms that if the heater and radiator mentioned in the contract were delivered on the defendant's premises before his house was destroyed by fire, and had been ordered to be so delivered by defendant, that the plaintiff was entitled to recover the second installment of $400. And, upon its own motion, further told the jury that "if the heater and radiators were upon defendant's premises when ready for use in construct-

ing the heating apparatus, and his house was ready for such construction of said apparatus, and defendant ordered any portion of the material of heater and radiators to be used in such construction, then said heater and radiators were delivered within the meaning of the contract between the parties, and the installment or $400 became due and payable."

The defendant asked the court to inform the jury as follows: "2. The jury are instructed that the plaintiff admits that at the time the heater and radiators in question arrived in St. Joseph, and were taken to the defendant's house, that they had not been ordered to be delivered by defendant, and that defendant took them to said house and stored them therein for the benefit and accommodation of plaintiff; and, unless the jury believed from the evidence that the defendant afterwards consented to receive, *or treated as having been delivered*, said heater and radiators for the purposes for which they were ordered, they will find for the defendant."

"If they believe from the evidence that the heater and radiator had, at the request of plaintiff and without being ordered by defendant, been taken to defendant's premises to be stored for the benefit and accommodation of plaintiff before the signing of the contract read in evidence, then it was necessary under said contract, before the sum of $400 could become due, that the said heater and radiators should thereafter be ordered by defendant to be delivered, or that the same should be in some way used with defendant's consent for his benefit."

These last two instructions were given substantially as prayed, the *italicized* words in the first indicate the extent of its modification by the court. The jury found that the heater and radiators had been taken to defendant's premises to be stored for the benefit and accom-

modation of plaintiff before signing the contract, and
that thereafter the defendant ordered said heater and
radiators to be delivered, or consented to receive, or
treated the same as having been received.   While the
words, "treated as having been delivered," as employed
in the court's instruction, are such as to furnish some
ground of criticism, still we think all that the court
meant to tell the jury was that if they found that the
defendant caused, by his direction, the heater and
radiators to be placed in position in the house for sub-
sequent use therein that they might infer from this fact
that there had been a delivery, and, no doubt, that was
the understanding of the jury.   When the instructions
are taken in their entirety, as they must be, it will be
seen that all the issues in the case were submitted to
the jury.   It is undeniably true that the instructions
contain a number of verbal inaccuracies but they are
sufficiently comprehensive in their hypotheses of facts
to embrace all the issues, under the pleadings and evi-
dence, which the jury were authorized to consider.
Nothing is perceived in the instructions which could
have led the mind of the jury away from the consider-
ation of the issues they were required to determine from
the evidence.   There are no such inconsistencies or
contradictions in them as were calculated to in any way
prejudice the defendant.

III.   The defendant makes the final point that the
trial court further erred in telling the jury in plaintiff's
third instruction that "it is of no consequence in this
case whether plaintiff, in executing the written contract
in suit, was acting for himself, or as agent for the
Detroit Heating & Lighting Company.   The plaintiff
having executed the contract in his own name can
maintain this action upon it."

The rule announced in the instruction is correct.
It is so at common law.   The general rule is, that where

a contract is in terms made with the agent personally he may be sued on it. And this rule applies, although the fact of the agency and the name of the principal are known. Mechem on Agency, sec. 755; Story on Agency, sec. 393, *et seq.; Snider v. Express Co.*, 77 Mo. 523; *Keown v. Vogel*, 25 Mo. App. 35.

But, independently of the common law, the plaintiff could maintain this action. It is provided by our code, as follows: "An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another." R. S. 1889, sec. 1991. This statute was enacted in 1855, appearing for the first time in the revision of that year. R. S. 1855, sec. 2, p. 1217. It is a substantial and almost literal copy of the statute of New York. Code of Civil Procedure of the State of New York, sec. 449. In 1860, this provision of the New York code came up for construction in the court of appeals in that state, and it was held that said provision embraced not only formal trusts declared by deed *inter partes*, but all cases in which a person in behalf of a third party enters into a written express contract with another, either in his individual name, without description, or in his own name, expressly in trust for or on behalf of, or for the benefit of, another, by whatever form of expression such trust may be declared. It includes not only a person with whom, but one in whose name, a contract is made for the benefit of another. The contracts set out in the complaint are within its terms. *Considerand v. Brisbane*, 22 N. Y. 389–396. This case was afterwards followed, and the construction placed upon the statute

applied by the supreme court of the United States in *Albany, etc., Iron & Steel Co. v. Lundberg*, 121 U. S. 451. And a like construction was placed on the above quoted provision of our statute in *Snider v. Express Co., supra*. It would, therefore, seem that the plaintiff can maintain his action either under the statute or the common law.

Perceiving no error in the record calling for our interference, the judgment must be affirmed. All concur.