## JOHNSTON, Respondent, v. O'SHEA, Appellant.

*St. Louis Court of Appeals, April 24, 1906.*

1. **JUSTICES OF THE PEACE: Statement.** A statement of a cause of action filed before a justice of the peace, which sufficiently showed the nature of the demand to enable the defendant to make a defense and which was specific enough to bar another action for the same demand, was sufficient.

2. **PARTIES: Trustee of Express Trust.** One who had charge of a lot of ground as trustee for another was trustee of an express trust and had authority to prosecute an action on a contract he made as trustee regarding the lot.

3. ————: **Counterclaim: Breach of Contract: Jury Question.** In an action on a contract for a balance which defendant agreed to pay plaintiff for the privilege of dumping dirt on the plain-

tiff's lot, in which action the defendant filed a counterclaim for damages caused by the plaintiff's refusal to permit the dumping it was a question for the jury whether five weeks was a reasonable time for the defendant to complete the dumping, and whether a refusal by the plaintiff to permit him to continue after that date, was a violation of the plaintiff's agreement such as to justify the counterclaim.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED.

*Chas. J. Macauley* for appellant.

(1)    The statement which plaintiff filed in the justice's court states no cause of action. It is too indefinite, and not such as the law requires. And the circuit court committed error in overrruling defendant's objection to the admission of any evidence on the part of the plaintiff. And the court also erred in not sustaining defendant's motion for a new trial and in arrest of judgment. R. S. 1899, secs. 3852-53, Leas v. Pacific Express Co., 45 Mo. App. 598; Rosenburg v. Boyd, 14 Mo. App. 429; Hill v. St. L. Ore & Steel Co., 90 Mo. App. 103; Nutter v. Houston, 32 Mo. App. 451; Dahlgren v. Yocum, 44 Mo. App. 277; Doggett v. Blanke, 70 Mo. App. 499; Moffett-West Drug Co. v. Johnson, 80 Mo. App. 428; McCray v. Good, 74 Mo. App. 425; Smith v. Zimmerman, 29 Mo. App. 249; Watkins v. Donnelly, 88 Mo. 322. (2)    (a)    Plaintiff could not successfully prosecute this suit in his own name. He testified that he was not the owner of the property and had no interest in it except as trustee. This suit, therefore, should have been brought in the name of the real party in interest, or else in the name of plaintiff as trustee for the real party in interest.    (b) If plaintiff brought this suit in a representative capacity, the facts out of which the trust relation grew should have been stated. But plaintiff failed to allege  the capa-

city in which he sued, which was necessarily fatal to his statement. Wilson v. Polk Co., 112 Mo. 126, 20 S. W. 469; Collins v. Burrus, 66 Mo. App. 72-3. (3) When a license is acted upon in a substantial manner so that to revoke it would be inequitable or unjust or where it is for an adequate consideration accepted by the grantor, it becomes a binding contract; and the grantor of such license has no right to revoke it to the injury of the grantee in the face of his contract or assurance to the contrary. Harvey v. Railway, 186 Ill. 293; Chiles v. Wallace, 83 Mo. 93; Baker v. Railroad, 57 Mo. 265; Gibson v. St. L. Agr. & M. Co., 33 Mo. App. 165; House v. Montgomery, 19 Mo. App. 170; Darlington v. Railway, 99 Mo. App. 12; Ditch Co. v. Ditch Co., 10 Colo. App. 282; Parish v. Kaspare, 109 Ind. 586; Rhodes v. Otis, 33 Ala. 600; Flickinger v. Shaw, 87 Calif. 126. (4) As a general rule, when one party contracts with another to do or perform a certain act and no time is mentioned in the contract when such act is to be performed, such party has a reasonable time in which to perform it. Bryant v. Saling, 4 Mo. 528; Salisbury v. Renick, 44 Mo. 554; Koeper v. Royal Inv. Co., 102 Mo. App. 543, 77 S. W. 307; Hill v. Hill, 113 Mass. 103.

*P. A. Griswold* for respondent.

(1) The statement filed by plaintiff with the justice of the peace, together with the original contract referred to in the statement, and also filed with the justice before the trial commenced, was a sufficient compliance with the statutory requirement. Ingalls v. Averitt, 34 Mo. App. 371; Wilkinson v. Ins. Co., 54 Mo. App. 664; Reeds v. Lee, 64 Mo. App. 685; Weese v. Brown, 102 Mo. 299, 14 S. W. 945; Sturdy v. St. Charles L. and C. Co., 33 Mo. App. 49, criticizing 90 Mo. 103. (2) Plaintiff had the right to maintain this action in his own name. Sec. 541, R. S. 1899; Bliss on Code Pleading (3 Ed.), secs. 46,

52, 54, 57, 90; Snider v. Ex. Co., 77 Mo. 523; Story on Agency, (2 Ed.), sec. 160. (3) Appellant must aver and prove a compliance with the terms of the contract before he can recover on his counterclaim. Billups v. Daggs, 38 Mo. App. 369; Perry & Moore v. Wheeler, 24 Vt. 286; Craycroft v. Walker, 26 Mo. App. 483-4; Eyerman v. Cem. Ass'n, 61 Mo. 489.

GOODE, J.—This action was instituted before a justice of the peace by filing the following statement of account:

"St. Louis, Missouri, November 1, 1902.
"Joseph O'Shea, to William J. Johnston, Dr.

"To privilege of filling in rear end of lot fronting 150 feet on north side of Forest Park boulevard, 450 feet west of Grand avenue, as per contract, $100; by cash, $50; balance due $50."

Before the trial in the justice's court the original contract on which the action was based was filed and is as follows:

"St. Louis, April 29, 1902.

"Permission is hereby given to Mr. Joseph O'Shea to fill the rear end of lot of ground fronting 150 feet on north side of Forest Park boulevard, beginning at a point 450 feet west of Grand avenue. The present depression on lot to be filled to a point not exceeding two feet above notch on west top of rock on alley side, and it is further agreed that while such filling is being done that Mr. O'Shea will prevent others from dumping on other parts of the property, and as a consideration he agrees to pay the sum of one hundred dollars to W. J. Johnston, trustee.

"JOS. O'SHEA.
"W. J. JOHNSTON."

Appellant filed the following counterclaim:
"Now comes the defendant in the above-entitled cause and denies that he is in any way indebted to plain-

tiff. And for further answer to plaintiff's petition and by way of counterclaim thereto, states that on or about the 29th day of April, 1902, plaintiff entered into a certain contract with defendant, whereby plaintiff agreed with defendant for and in consideration of the sum of one hundred dollars, to permit defendant to fill in a certain lot of ground in said city, having a frontage of one hundred and fifty feet on the north line of Forest Park boulevard, by a depth of one hundred and fifty feet, more or less, to an alley bounding said lot on the north, the east line of said lot being distant four hundred and fifty feet west of the west line of Grand avenue.

"Defendant further states that plaintiff failed, neglected and refused to permit him to fill in said lot of ground above mentioned according to the terms of said contract, although defendant had in every respect carried out his part of said contract.

"Defendant further states that he has been damaged by reason of plaintiff's failure and refusal to permit him to fill in said lot of ground according to the terms of their said contract, to the amount of five hundred dollars.

"Wherefore, the premises · considered, defendant prays judgment on this, his counterclaim, against plaintiff in the sum of five hundred dollars and costs of this suit."

The case went from the justice's court to the circuit court and was there tried anew. Respondent testified that after the contract granting permission to appellant to fill the lot was executed, there was a further verbal stipulation that the limit of time in which the filling was to be done was to be three or four months. He testified further that he pointed out a boundary on the lot within which the filling should be done. The premises were an old-time rock quarry and according to respondent, the understanding was that appellant should fill a triangu-

lar area about fifty feet wide on one side and sixty feet on the other two. Appellant did not confine his dumping to the agreed part of the lot, respondent swore, but distributed it over one hundred feet in width, to which act respondent made no objection. Respondent was paid $50 at the time the contract was signed and said he never was paid the other $50, though he demanded it of appellant several times, being put off each time. The action was for that balance. Respondent swore that appellant, at the date of the contract, was engaged in excavating for a structure to be erected by the Simmons Hardware Company and that the dirt to be dumped on respondent's lot was to be taken from that excavation. He said that he did not remember stopping appellant from dumping in June; that he did stop him the latter part of October when two wagonloads of dirt were sent to the lot, after an interval of several months during which no dumping had been done. Appellant swore it would require 6000 cubic yards of dirt to fill the depression and he was stopped from depositing dirt on the lot early in June, when he had not as yet dumped more than 2000 cubic yards and had not finished his excavation for the Simmons Hardware Company; that he paid respondent $50 when the contract was made and told him he would pay the balance when it was finished, to which arrangement respondent assented. Appellant further swore that by reason of respondent's stopping him in June when the part of the lot he was to fill lacked about 4000 cubic yeards of dirt, appellant was forced to haul the dirt from the excavation for the Simmons Hardware Company's structure to a lot at the corner of Newstead and Duncan avenues, and that it cost him thirty cents a load more to dump there than on respondent's lot. He testified that on two or three occasions respondent asked him for the remaining $50 and he offered to pay it at any time he was permitted to complete the work; that it would have taken about a month to fill the depression in

the lot from the Simmons Hardware Company's excava-
tion if there had been enough dirt to be taken out of the
latter place, but there was not; that appellant had other
contracts for excavating in the vicinity which would fur-
nish him earth to use, and the lot could have been filled
in about two months.  After appellant had testified, the
court said it was unnecessary to proceed any further in
the case and he would instruct the jury to find for the
plaintiff.  Appellant's counsel declared they had more
evidence to offer and objected to the case being termin-
ated at that stage; but the court overruled the objection
and instructed the jury to return a verdict for respond-
ent on his demand and also on the counterclaim.  Where-
upon the jury found the issue for respondent, assessing
his damages at $56.60, and found against appellant on
the counterclaim.  Judgment was entered in accordance
with the verdict and the case was appealed to this court.

1.  We think the account filed, accompanied by the
original contract on which it was founded, consituted a
statement of a cause of action, and overrule the conten-
tion that it did not.  Appellant was sufficiently advised
of the nature of the demand against him to enable him
to make a defense, and the statement was specific enough
to bar another action for the same demand.  [Johnson
v. Kahn, 97 Mo. App. 628, 71 S. W. 725.]

2.  We overrule the assignment of error based on
the fact that respondent was not the real owner of the
lot.  He testified that he was in charge of it as trustee
for another person, with full power to make contracts
and bring suits regarding it.  There was no testimony
to the contrary, and respondent should be regarded as
the trustee of an express trust and vested with authority
to prosecute in his own name an action on a contract he
had made as trustee, regarding the lot.  [R. S. 1899, sec.
541; Wright v. Tinsley, 30 Mo. 389; Harrigan v. Welch,
49 Mo. App. 496.]

3.  The refusal to permit appellant to proceed with his evidence and the peremptory instruction given in respondent's favor on both the demand and the counterclaim, cannot be upheld. We suppose the trial court proceeded on the theory that as a balance was owing on the amount to be paid by appellant for filling the lot, respondent was justified in stopping the work and suing. But in so holding, appellant's testimony that he was to pay the balance after the work was completed, was ignored. If no time was stipulated in which the filling was to be done, appellant was bound to complete the work within a reasonable time, the circumstances considered. He could not continue it indefinitely, thereby keeping the lot in an unusable condition. The contract was made April 29, 1904, and if appellant's testimony was true, respondent refused on June 5th to allow any more dirt to be dumped; that is to say five weeks after the contract was made. It cannot be held, as matter of law, that five weeks was a reasonable time to finish the job. No witness testified that it was, and appellant's testimony was to the contrary. And respondent himself testified to granting appellant three or four months in which to complete the work, and if he stopped him in five weeks, manifestly he violated the contract. The violation was a legitimate subject for a counterclaim; for the damages asked arose out of the breach of the very contract which is the basis of respondent's case. It is contended that inasmuch as appellant admits he sent two loads of dirt to the lot on October 23d, this proves his license was not revoked on June 5th. It proves nothing of the kind conclusively; but is consistent with the theory that appellant made another attempt to go on with the dumping and was again refused the privilege.

The judgment is reversed and the cause remanded. All concur.