## In re JACK BARTON SHOE CO.

## J. LANDIS SHOE CO. v. HUDSON.

District Court, W. D. Missouri, W. D. June 7, 1928.

### No. 4144.

Samuel D. Newkirk, of Kansas City, Mo. (Edward Holloway, of New York City, Charles M. Blackmar, of Kansas City, Mo., Douglas, Armitage & McCann, of New York City, and Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for claimant.

Glenn C. Weatherby, of Kansas City, Mo. (John W. Kramer and Edwards, Kramer & Edwards, all of Kansas City, Mo., on the brief), for trustee.

REEVES, District Judge. In the bankruptcy proceedings the petitioner, the J. Landis Shoe Company, filed its general claim for a balance of $1,641.03 on account.

The trustee objected to the claim upon the ground that the claimant had obtained the return of certain merchandise previously sold by it to the bankrupt, and that in so doing it had obtained a preference. The claimant denies this, and, upon the issue thus joined, a hearing was had before the referee who found that the claimant had obtained an unlawful preference in the sum of $8,878.04.

There is no issue on the facts. In the fall of 1921 the bankrupt was incorporated with a paid-in capital of $10,000. The object was to engage in the wholesale shoe business in Kansas City, Mo.

Between October 13 and December 6, 1921, it bought shoes of the claimant in the aggregate sum of $10,519.07. On the first of January, 1922, it had its capital intact, but was without appreciable surplus.

It was able to make no substantial payments on claimant's account and through the months of February, March, April, and May, bankrupt tried to induce claimant to take back the merchandise because of alleged defects. This it refused to do. During these months the claimant was urging payment on its account and refused to extend further credit to the bankrupt. The bankrupt had declined to agree to a return of the shoes upon a 25 per cent. discount from the invoice price as finally proposed by claimant, but on June 1st acquiesced in a telegraphic proposal of May 31, 1922, from claimant as follows: "Best offer we can make on Landis stock is twenty five per cent less than price originally billed to you. Will allow net cost to you on infants which you claim were made wrong."

Bankrupt's acceptance was as follows:

"Offer on Landis shoes accepted. Furnish shipping instructions as soon as possible."

On June 6th following, claimant advised bankrupt: "I have referred the matter of shipping instructions on the Landis shoes to our Mr. L. Charleroy, Harrisburg, and you should receive shipping instruction from him within a few days."

In due course shipping instructions were received and shipment began on June 29, 1922, and was concluded July 28, 1922. An involuntary petition in bankruptcy was filed on October 25, 1922. It will be observed, therefore, that the contract for a resale of the merchandise to the claimant was made on June 1st, but that the shipment and delivery was not made until within four months of bankruptcy.

The usual questions under such circumstances are urged. First, was the transfer made within the period of four months next before the filing of the petition in bankruptcy? Second, was the bankrupt then insolvent and, if so, did the claimant have reasonable cause to believe that the enforcement of its transfer would effect a preference?

It is admitted that the laws of Missouri would be invoked in the interpretation and enforcement of the contract of June 1, 1922. Admittedly, the merchandise in question had been previously bought by the bankrupt of the claimant. The contract of June 1, 1922, was therefore a contract of purchase and sale. The evidence showed that the merchandise had been stored in the original packages and had been kept separate and apart from the other merchandise, though, of course, in the possession of bankrupt.

1. Section 2282, R. S. Missouri 1919, provides that: "Every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by delivery in a reasonable time, regard being had to the situation of the property, * * * shall be held to be fraudulent and void, as against the creditors of the vendor."

No reason appeared why the merchandise in question could not have been shipped immediately. It remained in the possession of the bankrupt for approximately one month after the contract of purchase had been made. Moreover, the proposal to purchase was no more than an executory contract. Its full execution depended upon the delivery of the merchandise attended with proper credit entries upon the books of the plaintiff. This was not done until within the period of four months before bankruptcy. The referee was

correct in holding that the transfer was not made until within said four months, and as hereinbefore stated the sale under the Missouri statute was fraudulent in law and therefore void as to creditors.

2. The other question remaining in the case is whether bankrupt was then insolvent and whether the claimant at the time of the transfer had reasonable cause to believe that the enforcement thereof would effect a preference. A careful reading of all of the correspondence passing between the claimant and bankrupt appears to warrant the conclusions reached by the referee that the bankrupt was then insolvent, and that the claimant did have or should have had such knowledge. The energy with which it pressed its claim, its refusal to extend further credit and to take back the merchandise, its invitation to the bankrupt to obtain its merchandise elsewhere, and its final insistence on taking the merchandise back at a 25 per cent. discount, would indicate that it knew or should have known that the bankrupt was in a bad state financially, and that the transaction itself would strongly tend toward insolvency and bankruptcy. All the correspondence indicated financial stress with unwarranted optimism for the future.

The court is of the opinion that there was testimony from which the referee properly arrived at the conclusion announced by him, and the court would have no disposition to disturb the result.

Accordingly, the findings and conclusion of the referee will be confirmed. It is so ordered.