### In re JACK BARTON SHOE CO.

### J. LANDIS SHOE CO. v. HUDSON.

Circuit Court of Appeals, Eighth Circuit.
April 22, 1929.

No. 8312.

898

· Samuel D. Newkirk, of Kansas City, Mo. (Edward Holloway, of New York City, Charles M. Blackmar, of Kansas City, Mo., Douglas, Armitage & McCann, of New York City, and Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for appellant.

Glenn C. Weatherby, of Kansas City, Mo. (John W. Kramer and Edwards, Kramer & Edwards, all of Kansas City, Mo., on the brief), for appellee.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. This is an appeal from an order of the District Court of the United States for the Western District of Missouri, 32 F.(2d) 896, affirming the findings and conclusions of a referee in bankruptcy to the effect that the claimant, appellant herein, had received a voidable preference in the sum of $8,878.04, on account of a repurchase of shoes from the bankrupt, and ordering that the claimant, J. Landis Shoe Company, be adjudged to owe and stand indebted to the bankrupt estate in said sum, and upon return of the shoes to the trustee in bankruptcy within 20 days from the date of the order, the indebtedness to be deemed canceled, otherwise to remain in full force, and upon default the' trustee to institute proceedings for the recovery of said sum. The amended claim of J. Landis Shoe Company was then allowed in the sum of $1,641.03.

From the record it appears without controversy that Jack Barton Shoe Company was incorporated under the laws of Missouri in the fall of 1921, with a paid-up capital of $10,000. Its business was to engage in wholesale shoe merchandising in Kansas City, Mo. Between October 13 and December 6, 1921, it bought shoes from the claimant in the aggregate sum of $10,519.07. On the first day of January, 1922, its capital stock was intact but without appreciable surplus.

The shoes in question were purchased by the bankrupt upon a credit of 60 days. The purchase of the shoes in question appears to have been the original stock of the bankrupt concern, and, business not having been brisk during the first 60 days, the purchase price of these shoes was not paid. The shoes were of various varieties, and one lot was of infants' shoes. Some of these shoes did not seem to move readily, and the infants' shoes were found unsatisfactory and claimed to be defective. About a month after the original default in payment of the bills, a line of correspondence was opened between the Jack Barton Shoe Company and claimant; some of the letters, however, being written to an officer of the G. R. Kinney Company, of which the J. Landis Shoe Company, claimant, was a subsidiary. No question, however, is made as to the authority of any of the officials corresponding with the bankrupt concern. On February 4, 1922, H. R. Barton, president of the bankrupt, wrote to E. H. Krom, president of the G. R. Kinney Company, as follows:

"The McKay shoe from Johnson-Baillie Shoe Co., and the turns from Bedford Shoe Co. are proving very successful. The Goodyear welts J. Landis, however, are not moving and do not seem to be suitable at this time, which of course, is a serious handicap to us. With this constant thought before me I have often wondered if there was not some way in which the Kinney Company could draw on our stock of Landis welts. If this feature would be of interest to you I would appreciate hearing from your Merchandise Department at their earliest convenience."

On May 4, 1922, E. H. Krom wrote H. R. Barton as follows:

" * * * I note that you have sent Johnson-Baillie Company some payments, which we were very grateful to receive. Mr. Goodyear is getting very anxious that his account be settled, as is also Mr. Landis. You speak about the Landis goods having not sold. Am wondering if you would ·prefer to have us take these off your hands, that is all of the Landis shipments of last season. If these shoes are in good condition will take them at 25% discount from what they cost

you, net. In as much as these are last season's goods, and not so very desirable to any one, think this is an exceptionally fair offer and might help you to square up his account and put you in shape to buy more seasonable merchandise for fall."

On May 12, 1922, Jack Barton Shoe Company wrote E. H. Krom as follows:

" * * * In reference to the Landis account, wish to advise that we have really been holding forty-one dozen Welts in sizes five to eight, which as previously stated, were not made according to specifications, and, which in the average mind are not Goodyear Welts. The balance of the shoes from Landis are, of course, last season's goods, and if figured on today's basis would possibly show a slight depreciation. However, we feel that a twenty-five per cent. discount as mentioned by you is a rather high mark. I do not want you to think that I am selfish, but would it not be fair for Landis to accept these shoes back on a basis of ten per cent. discount, and we pay the freight both ways. If this arrangement can be made I am sure that our other settlements can be handled very much more satisfactorily, and as stated in your letter, it would put us in shape to buy more seasonable merchandise for fall. * * *

"Our business is showing more activity each day, and I feel more sure than ever of a successful undertaking."

On May 16, 1922, E. H. Krom wrote H. R. Barton as follows:

"I have your letter of May 12th, wish to assure you that we do not wish to be unfair in regard to taking back the Landis shoes; still we do not want to lose too much by taking them back. Am not very well posted as to just what these goods consist of and would ask that you send me a sample shoe of what you have of the Landis line, showing amount on hand and size. As soon as they are received, will advise you what we can do about this.

"Was very much pleased to learn that your business is showing more activity, and trust that this condition will improve right along."

On May 31, 1922, Krom wired Jack Barton Shoe Company as follows:

"Best offer we can make on Landis stock is twenty-five per cent. less than price originally billed to you will allow net cost to you on infants which you claim were made wrong."

On June 1, 1922, Jack Barton Shoe Company wired Krom as follows:

"Offer on Landis shoes accepted furnish shipping instructions soon as possible."

On June 6, 1922, Krom wrote Jack Barton Shoe Company as follows:

"I have referred the matter of shipping instructions on the Landis shoes to our Mr. L. Charleroy, Harrisburg, and you should receive shipping instructions from him within a few days."

Thus the contract for a repurchase of the shoes in question appears to have been consummated on June 1, 1922. Shipping instructions were somewhat delayed, but were given by letter dated June 24, 1922. The instructions directed that the shipments of shoes were to be made to Halstead street, Chicago; Wichita; Milwaukee avenue, Chicago; Omaha; and Kansas City.

Following the receipt of the instructions, the bankrupt made the following shipments:

| | |
|---|--:|
| June 29, 1922, shipment to G. R. Kinney Shoe Company at Chicago, Illinois, shoes amounting to | $ 695 16 |
| June 30, 1922, another shipment to G. R. Kinney Shoe Company at Wichita, Kansas, amounting to | 370 80 |
| June 30, 1922, another shipment to G. R. Kinney Shoe Company at Wichita, Kansas, amounting to | 1,636 09 |
| June 29, 1922, a shipment to G. R. Kinney Shoe Company at Chicago, Illinois, amounting to | 1,080 98 |
| June 30, 1922, a shipment to G. R. Kinney Shoe Company at Omaha, Nebraska, amounting to | 133 20 |
| June 30, 1922, another shipment to G. R. Kinney Shoe Company at Omaha, Nebraska, amounting to | 4,290 91 |
| July 5, 1922, the bankrupt delivered to the G. R. Kinney Shoe Company at Kansas City, Missouri, two deliveries of shoes amounting respectively to | 434 05 |
| and | 2,460 62 |
| July 28, 1922, another delivery to the G. R. Kinney Shoe Company at Kansas City, Missouri, amounting to | 68 75 |

It will thus be seen that practically all of these shoes were shipped out over a period of 10 days following the receipt of instructions. A small order aggregating only $68.75 seems not to have been shipped until July 28th, about 33 days after the receipt of the instructions.

On October 25, 1922, an involuntary petition in bankruptcy was filed against Jack Barton Shoe Company. Thereafter an amended petition was filed, and on November 1, 1922, Jack Barton Shoe Company was adjudged bankrupt. On November 27, 1922, J. Landis Shoe Company filed its proof of claim with the referee in the sum of $9,967.39, and on February 1, 1923, amended this proof of claim reducing the claim to $1,641.03. The trustee filed objections to the claim alleging that merchandise had been returned by the bankrupt within four months preceding the adjudication, and claimed that the claimant had received a voidable preference.

We now quote from the opinion of the trial judge, which is incorporated in the record:

"The usual questions under such circumstances are urged. First, was the transfer made within the period of four months next before the filing of the petition in bankruptcy? Second, was the bankrupt then insolvent and, if so, did the claimant have reasonable cause to believe that the enforcement of its transfer would effect a preference?

"It is admitted that the laws of Missouri would be invoked in the interpretation and enforcement of the contract of June 1st, 1922. Admittedly, the merchandise in question had been previously bought by the bankrupt of the claimant. The contract of June 1st, 1922, was therefore a contract of purchase and sale. The evidence showed that the merchandise had been stored in the original packages and had been kept separate and apart from the other merchandise though, of course, in the possession of bankrupt.

"1. Section 2282 R. S. Missouri 1919 provides that 'Every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by delivery in a reasonable time, regard being had to the situation of the property, * * * shall be held to be fraudulent and void, as against the creditors of the vendor.'

"No reason appeared why the merchandise in question could not have been shipped immediately. It remained in the possession of the bankrupt for approximately one month after the contract of purchase had been made. Moreover, the proposal to purchase was no more than an executory contract. Its full execution depended upon the delivery of the merchandise attended with proper credit entries upon the books of the plaintiff. This was not done until within the period of four months before bankruptcy. The referee was correct in holding that the transfer was not made until within said four months and as hereinbefore stated the sale under the Missouri Statute was fraudulent in law and therefore void as to creditors."

In our opinion the trial court was in error in its conclusion above quoted. We think, having regard to the situation of the property and the circumstances in the case, that it is doubtful that delivery was withheld for such an unreasonable time as would violate the spirit of the statute of Missouri quoted. The record discloses no suggestion of collusion between the parties to delay the shipments. However, assuming but not deciding that final delivery was withheld for an unreasonable time, no creditor obtained a lien on any of the property in question before final delivery of all of the shoes.

In McIntosh v. Smiley, 107 Mo. 377, 17 S. W. 979, the Supreme Court of Missouri speaking through Brace, Justice, said: "The conclusion reached by the Kansas City court of appeals in this case, that a bona fide sale of goods and chattels, the possession of which is not taken within a reasonable time after the sale, within the meaning of section 2505, Rev. St. 1879 [§ 2282 R. S. Missouri 1919] is not void, as to an existing creditor at the time of the sale, if, before the institution of an attachment suit by such creditor, the vendee takes and retains actual, continuous possession of the property, and remains in possession thereof at the time of the levy of the writ in such suit upon such property, meets with our approval. The precise question, under that section of the statute, has not hitherto been passed upon by this court, but the decision of the court of appeals finds support in the rulings of this court in the following cases: Dobyns v. Meyer, 95 Mo. 132, 8 S. W. 251 [6 Am. St. Rep. 32]; Petring v. Chrisler, 90 Mo. 650, 3 S. W. 405. The judgment of the Kansas City court of appeals is affirmed." See, also, Thompson v. Massey, 76 Mo. App. 197; Jones, Trustee, v. Bank of Excelsior Springs, 201 Mo. App. 545, 213 S. W. 892; Toney v. Goodley, 57 Mo. App. 235.

We again quote from the trial court's opinion:

"2. The other question remaining in the case is whether bankrupt was then insolvent and whether the claimant at the time of the transfer had reasonable cause to believe that the enforcement thereof would effect a preference. A careful reading of all of the correspondence passing between the claimant and bankrupt appears to warrant the conclusions reached by the Referee that the bankrupt was then insolvent and that the claimant did have or should have had such knowledge. The energy with which it pressed its claim, its refusal to extend further credit and to take back the merchandise, its invitation to the bankrupt to obtain its merchandise elsewhere, and its final insistence on taking the merchandise back at a twenty-five per cent. discount, would indicate that it knew or should have known that the bankrupt was in a bad state financially and that the transaction itself would strongly tend toward insolvency and bankruptcy. All the correspondence indicated financial stress with unwarranted optimism for the future."

The materiality of this second question depends upon whether title had passed to J. Landis Shoe Company prior to the beginning of the four months' period. This was not an ordinary sale in connection with which a purchase price was to be received either in cash or at a deferred time. It was a resale, the consideration being a credit on the original purchase price in the amount of the agreed resale price. In these circumstances we think the title passed when the bargain was struck. In Briggs v. United States, 143 U. S. 346, 354, 12 S. Ct. 391, 395 (36 L. Ed. 180), Mr. Justice Field speaking for the Court said: "By the common law a sale of personal property is complete and title passes as between vendor and vendee when the terms of transfer are agreed upon, without actual delivery"—citing, Simmons v. Swift, 5 B. & C. 857, 862.

We quote from the text, 24 Am. & Eng. Encyc. of Law (2d Ed.) 1051: "When there has been no manifestation of a contrary intention, the presumption of law is that the contract is an actual sale, and that the transfer of title takes place at once in advance of actual delivery, if the thing is agreed on, and it is ready for immediate delivery"—citing very numerous cases, among them: Toney v. Goodley, 57 Mo. App. 235; Harding v. Manard, 55 Mo. App. 364; Harrigan v. Welch, 49 Mo. App. 496.

We quote also the text from 35 Cyc. 279: "Where there is an unconditional contract for the sale of specific goods in a deliverable state, unless a different intention appears, the property in the goods passes to the buyer when the contract is made without payment of the price or delivery of the goods"—citing one Missouri case, Glass v. Blazer, 91 Mo. App. 564.

We think that in the instant case, there being nothing further for the purchaser to do, the title passed to the shoes in question on June 1st, notwithstanding there was some delay in furnishing instructions and in shipping the goods. Entry of credit on the books of the respective parties was not material. The question is: When was the vendor legally entitled to insist upon credit? If our conclusion in this respect is correct, then no title vested in the trustee in bankruptcy to any part of the shoes in question, even though the $68.75, invoice was not actually shipped until within the four months' period.

The case for the errors stated must be reversed and the cause remanded, with direction to vacate the referee's order.

Reversed and remanded.